## JOHN PERRY *v.* JOHN AMES.

EFFECT OF EXCEPTION IN A STATUTE.—The exception by name of certain counties of the State from the operation of certain provisions of the General Road Law of 1861, limits the exception, by implication, to the counties specified.

COUNTY WARRANT ISSUED WITHOUT AUTHORITY.—If a contract entered into on behalf of a county is unauthorized by law and void, a warrant drawn by the Auditor on the Treasurer, in pursuance of an order of the Board of Supervisors, for work performed under the contract, is also unauthorized and void, and the Treasurer cannot be compelled to pay the same.

SAN MATEO COUNTY.—The provisions of the Act of 1861, entitled "An Act to provide for the establishment, maintenance, and protection of public and private roads," apply to the County of San Mateo.

SAN MATEO COUNTY ROAD FUND—ACTS OF 1857 AND 1861.—The prohibitory provisions of the ninth and tenth sections of the Act of April 18th, 1857, entitled "An Act to reorganize and establish the County of San Mateo," are inconsistent with and repugnant to the fifteenth section of the Act of 1861, entitled "An Act to provide for the establishment, maintenance, and protection of public and private roads," and are repealed by it as to the subject matter of the Act of 1861.

JURISDICTION OF DISTRICT COURTS.—The fourth section of the Sixth Article of the Constitution of this State, as amended in 1863, confers upon the District Courts original jurisdiction to issue writs of mandamus, certiorari, prohibition, and habeas corpus.

APPEAL from the District Court, Twelfth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Horace Hawes,* for Appellant.

The claim which in this case the County of San Mateo resists, is a debt attempted to be contracted by the Board of Supervisors in contravention of sections nine and ten of the Act entitled an Act to reorganize San Mateo County, passed in 1857.    (Laws 1857, p. 224.)

The present controversy is reduced to a single point of inquiry, namely : *Were* the foregoing provisions the law in San Mateo County at the time when respondent's claim accrued ? for it is conceded that the claim accrued and was contracted in contravention of the sections of the Act referred to, and that it was and is absolutely void, if they were then in force.

The position of respondent's counsel is, that these sections were repealed by the General Road Law of 1861.   If wrong

in this, their claim is invalid, and the judgment in this case should be reversed.

The object of the law of 1857 was, that each year's expenditures should be limited to its income. That law did not contemplate that all contracts, operations, and expenditures of the county government should cease, but only that they should be limited to the revenue. In short, the restriction does not relate to the power to contract generally, but only to the power to *contract a debt*, and to apply the moneys of one year to pay the expenses of a preceding year. By the tenth section of the Act of 1857, no tax can be levied to pay any debt that may be contracted, and as a *necessary consequence*, as well as by the *express provisions* of the ninth section, no part of the money collected in one year can be applied to pay any expenses or liability incurred during any preceding year. In the two sections are three prohibitions, each of which, when stated in its order, is involved in the preceding one as a logical and necessary consequence of it. I will state them in this logical order :

1. No officer or authority shall have power to contract any debt.

2. No tax shall be levied to provide for the payment of any debt.

3. No part of the money collected in one year shall ever be applied to pay any expenses or liability incurred during any preceding year.

Now, the first prohibition includes the second ; for, to use the precise language of this Court in *Nougues* v. *Douglas*, 7 Cal. 81, " all debts contracted in violation of it are utterly void, and there is *no power to levy a tax or appropriate money for the payment thereof.*" The prohibition in the law of 1857 is also expressed in stronger and more efficacious terms than those contained in the Seventh Article of the State Constitution, which was the subject of construction in the case just cited. The language of the *Constitution* is, that the Legislature *shall not create a debt*, etc. But in the *law of* 1857 it is declared that neither the Supervisors nor any officer or citizen

*shall have power* to contract a debt against the county, etc. Implications are also in favor of the acts of the Legislature, as that body has all legislative authority, except what is prohibited. No implications can favor the acts of Boards of Supervisors, for they have *no power* but what is expressly granted by statute.

The third prohibition is likewise a logical result of the second, for if no tax can be levied to pay a debt, it is clear that the money raised by taxation cannot be applied to that purpose ; that the money raised in one year " cannot be applied towards the payment of any expenses or liability incurred during any preceding year."

All the cases cited by respondent's counsel tend only to establish a point which is undisputed, that a subsequent statute repeals a former one in respect to such provisions as are so repugnant to the latter that the two cannot stand together. But they have failed to show either that the power to contract for work on roads given by the Road Law is repugnant to the Act of 1857, or that the Act of 1857 is repugnant to the same power conferred by prior laws, and the exercise of which was continued under and subject to the limitation of the Act of 1857. In the case of *Brown* v. *The County Commissioners*, 21 Penn. 43, it is said : "Whenever two Acts can be made to stand together, it is the duty of the Judge to give full effect to both of them. Even where they are seemingly repugnant, they must, if possible, have such a construction that one may not be a repeal of the other, unless the latter one contain negative words, or the intention to repeal is made manifest by some intelligible form of expression."

Now, there is between the Road Law of 1857 and the limitations of the Act of 1861 no such repugnance. The Board of Supervisors may do all that they are *required* to do under the latter Act, and pay the expense thereof out of the revenues of the year in which the expense is incurred—pay as they go. In other words, they may limit their expenditures to their income.

*Taylor & Hastings,* for Respondent.

To determine whether the Road Law of 1861 is repugnant to and in conflict with sections nine and ten of the organic law of San Mateo County, we have only to look at the provisions of the two Acts.

Sections nine and ten expressly prohibit the Board of Supervisors or *any* officer from entering into any contract or creating any liability against the county whatever, and declare that no property shall be taxed to liquidate any such liability or to perform any such contract, nor shall the money collected for one year be applied to the payment of debts or expenses of the preceding year.

Now, the Road Law of 1861 does away with these limitations of power, so far as concerns roads. It will be seen that sections three, five, six, and twelve, of the General Act of 1861, authorize acts which cannot but create debts against the county. Section fifteen *permits the roadmaster, with the consent of the Board of Supervisors, to make contracts in behalf of the county without any limitation as to the amount of the liability to be incurred, and without any consideration as to whether, at the time of entering into such contract, there is money in the Treasury, or likely to be.* In section fifteen alone, the word *contract* occurs no less than three times, and always in the permissive sense as touching the rights of the officers to contract in behalf of their county. The roadmaster, of his own motion, must maintain the roads in good repair, and when any bridge, culvert, etc., shall become injured, or render the way impassable or dangerous, *then* he is to incur the necessary expense in its repair or alteration.

We take it, therefore, to be clear that the organic law of San Mateo County is repealed, *so far as roads* are in question, by the General Road Law of the State, the two being directly hostile and repugnant. Section twenty-two, of the law of 1861, repeals "all Acts or *parts* of Acts in conflict with the provisions of this Act," while section twenty-one particularly designates those *counties* and certain incorporated towns which

" are excepted from the provisions of this Act," among which San Mateo County finds no place, and therefore, by a well known rule, is specially included within the Act.

In short, the principle invoked here is that declared in the *State* v. *Conkling*, 19 Cal. 512 : " That when the Legislature makes a ·revision of particular statutes, and frames a general statute upon the subject matter, and from the framework of the Act it is apparent that the Legislature designed a complete scheme for this matter, this is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is ignored."

This view is rendered conclusive from the fact that in 1859 a Special Road Act was passed for San Mateo County, (Laws of 1859, p. 229, *et seq.*) which was anxiously framed to keep within the organic Act of 1857.

The word *contract* in the Road Law of 1859, is never once used. No one will pretend that the Road Law of 1859 is the Road Law of San Mateo County since the General Law of 1861. In respect to roads, the County of San Mateo is governed by the same law as the County of Alameda. In Alameda this claim would not be questioned; by San Mateo it cannot be resisted.

By the Court, CURREY, J.

In December, 1863, the plaintiff, who had become the owner and holder of certain county warrants of the County of San Mateo, applied by petition to the District Court of the Twelfth Judicial District, for a writ of mandamus to be directed to the defendant, as Treasurer of said county, requiring him to pay the amount due thereon upon their presentation to him for that purpose. The defendant appeared and filed an answer setting forth the grounds why the petition should not be granted, and thereupon the matters in controversy were submitted to the Court, and a judgment was rendered directing a writ of mandamus to be issued in accordance

with the prayer of the plaintiff. From this judgment the defendant has appealed.

In April, 1862, the roadmaster of one of the road districts in the County of San Mateo, with the consent of the Board of Supervisors, after having first given the notice required by law, entered into a contract with one Lloyd, to build a bridge over one of the highways in such district, for a price stipulated; and in due time the bridge was constructed by Lloyd, and the work was approved by the proper authority, when the Auditor of the county, in pursuance of an order before then made by the Board of Supervisors, drew two warrants or drafts, each of which was dated August 2, 1862, and directed to the Treasurer of San Mateo County, requesting him to pay to the order of the said Lloyd two hundred and fifty dollars out of the road fund, for the building of the bridge. On the same day, Lloyd presented these warrants to the Treasurer for payment, and, there being no funds in the Treasury with which to pay them, the Treasurer registered the same and indorsed them "Not paid for want of funds," and signed his name thereto as County Treasurer. After the plaintiff became the owner of the warrants, he presented them for payment to the Treasurer, in whose hands there was at the time sufficient money applicable to the payment of the warrants, to pay the same with the interest that had accrued thereon. The Treasurer refused and still refuses to pay the warrants, on the ground that the contract with Lloyd was not authorized by the Act of the Legislature of this State, passed in 1857, entitled "An Act to reorganize and establish the County of San Mateo;" and that therefore the warrants were issued without authority and are void. (Laws 1857, p. 222.)

The decision of the case depends upon the effect of this Act of 1857, and the Act of 1861, entitled "An Act to provide for the establishment, maintenance and protection of public and private roads." (Laws of 1861, p. 389.) If the Act of 1857, so far as it applies to the question involved in this case, is to control, then it is admitted, on the part of the plaintiff,

48

the writ ought not to have been granted, and the judgment cannot stand.

The defendant relies upon the ninth and tenth sections of this Act in justification of his refusal to pay the amount alleged to be due by these warrants. These sections read as follows:

" Sec. 9. The Board of Supervisors shall also have powers to levy and collect an annual tax in the manner prescribed by law, not exceeding fifty cents on each one hundred dollars of taxable property in said county, to provide for the current expenses of the county; but no part of the money so collected shall be applied toward the payment of any expenses, debt or liability incurred during any preceding year.

" Sec. 10. Neither the Board of Supervisors, nor any officer or citizen of said county, shall have power to contract any debt or liability against the said county; and no person or property therein shall ever be liable or subject to be taxed for any debt whatever hereafter contracted against the said county by the Board of Supervisors; *provided*, the provisions of this section shall not be held to prevent the paying out of money actually in the Treasury, to the objects contemplated by law."

The plaintiff's counsel contends that these sections of the Act of 1857 are necessarily repealed by the Act of 1861.

The Act of 1861 is a law general in its nature, and was evidently designed to have application to the whole State, except in so far as certain counties and portions of counties are exempted from its operation. The twenty-first section excepts certain counties by name, and all incorporated cities and towns, from its provisions, and the Counties of Sonoma and Marin are exempted from the provisions of certain of its sections; from which it is plainly to be inferred that the Act applies to those counties not excepted in terms. The exceptions made operate as a limitation of the exempted counties. *Expressio unius est exclusio alterius* is a maxim of general application in the construction of statutes.

By the fifteenth section of the Act of 1861 it is provided, that the roadmaster may, with the consent of the Board of Supervisors, make contracts for the purchase of lumber or other material for building bridges or culverts, for grading roads or any other necessary work upon the highways within his district, etc., and subsequently in the same section it is provided that " All payments for the fulfilment of any contract for the purposes heretofore specified, shall be made by drafts drawn on the county road fund by order of the Board of Supervisors."

The process and mode by which the county road fund is to be created, is provided in the thirteenth section of the Act. It consists of a poll tax of two dollars upon all able bodied men of a particular description, and a road tax upon all taxable property in the county, not to exceed twenty-five cents on the hundred dollars.

That it was designed by the Legislature that the provisions of the Act of 1861 should be extended to the County of San Mateo, we see no reason to doubt; nor do we understand the counsel for the appellant to maintain in argument, that the Act was wholly inoperative as to that county, but rather that a promise to pay for services rendered and performed under and in pursuance of the contract made in 1862, could not be enforced, except in the contingency that the road fund of that year was sufficient for the purpose of paying the debt or liability thus created; the result of which would be that the person who had rendered his services upon the faith of the contract and in confidence that the officers of the county, having the matter in charge, would provide the means to pay him the price stipulated, would be entirely without remedy, for the reason that the fund of the designated year proved inadequate for the payment. Thus while the creditor might have the right to compensation for the work performed and accepted on the part of the county, he would be without remedy to enforce his right.

It must be admitted that if the contract entered into between the roadmaster and Lloyd was unauthorized, and therefore void,

then it would follow that the subsequent act of issuing the warrants for the work performed in pursuance of that contract was also unauthorized and void ; and in such case the assignee of Lloyd would be without remedy, because of the want of a right that the law could respect. But does it follow that the contract entered into was rendered void, or proved to be so *ab initio*, because the road fund of 1862 was not sufficient to pay the price agreed upon for building the bridge ?

It is maintained on the part of the appellant that the direct object of the Act of 1857 was that each year's expenditures should be limited to its income, and that no part of the money collected in any one year can be applied toward the payment of any expenses, debt or liability incurred during any preceding year. This may be so as to the matters within the purview of the Act of 1857, in respect to which the inhibitions of the ninth and tenth sections of that Act had reference. The Act of 1861 conferred upon the Supervisors and the roadmaster additional duties, and the powers to perform those duties as therein prescribed ; and so far as such additional duties and the powers to perform them are repugnant to the restrictions contained in the ninth and tenth sections of the organic Act of the county, to that extent such restrictions were repealed by the Act of 1861, the last section of which repeals "all Acts or parts of Acts in conflict with the provisions of this Act."

The Act of 1857, as already seen, prohibits the application of money collected in one year to the payment of any expenses, debt or liability incurred during any preceding year, and also declares that neither the Board of Supervisors, nor any officer or citizen of the county shall have power to contract any debt or liability against the county ; and it further declares that no person or property in the county " shall ever be liable or subject to be taxed for any debt whatsoever hereafter contracted against said county by the Board of Supervisors." But the Act of 1861 authorizes the roadmaster, with the consent of the Board of Supervisors, to make contracts for the purchase of lumber or other material for building bridges or culverts, for grading roads, or any other necessary work upon

the highways within his district.   Here is authority for contracting a debt or liability against the county; and the Act provides for the payment of the debt thus created.   The power granted by the Act of 1861, could not be exercised in respect to the subjects of the Act, if the prohibitions of the Act of 1857 be of binding authority; hence the prohibitory provisions of that Act must be regarded as inconsistent with and repugnant to the provisions of the Act of 1861, and to have been repealed by it, as to the subject matter of the latter Act. The conflict between these Acts in respect to the objects contemplated by the last of the two, is manifest; and this fact being ascertained and determined, the repeal of so much of the organic Act of the county, as is repugnant to, or in conflict with the Act of 1861, is expressly declared in the final section of the last Act.   The views we entertain of the question considered render it unnecessary to refer to the doctrines of the law on the subject of repeals by implication.

The judgment is affirmed.

[After the above opinion was pronounced, a re-argument was granted on the petition of the appellant, and the following opinion delivered:]

By the Court, CURREY, J.

The point discussed on the re-argument of this case is as to whether the Act of 1861 is repugnant to the Act of 1857. In the consideration of the question suggested, the Act of 1861 is to be examined, in the first instance, without reference to the senior Act, in order to ascertain its meaning and the extent of the powers of the officers therein named in relation to the matters committed to their charge.   This Act, as may be seen by reference to it, gives to the roadmaster authority to make certain contracts, subject to one condition only, to wit: the consent of the Board of Supervisors.   The Act does not limit the amount of debt which may be incurred for the objects contemplated; hence it follows that the roadmaster,

having the consent of the Board of Supervisors, may enter into the contracts named in the Act, unrestricted by the Act itself as to the amount of the debt to be thereby created.

The Act of 1857 denies to all officers the power to contract any debt or liability against the county. The Act of 1861 empowers the roadmaster to contract debts or liabilities against the county, and fixes no limit as to their amount. It is obvious that both of these Acts cannot be operative. If the Act of 1857 is to have effect in the particular mentioned, then a roadmaster in San Mateo County can have no authority, with the consent of the Supervisors or otherwise, to enter into any contract specified in the Act of 1861. In *Bowen* v. *Lease*, 5 Hill, 221, the Court say: " As all laws are presumed to be passed with deliberation and with full knowledge of all existing ones on the same subject, it is but reasonable to conclude that the Legislature, in passing a statute, did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable." This authority, cited on the part of the appellant, we concede states the rule clearly and correctly, and the inquiry is reduced to the point as to whether the Acts under consideration are irreconcilably repugnant to each other. That they are so, we think is manifest upon first impression. The first Act says no officer shall have power to contract any debt against the county, and the last says the roadmaster shall have the power, provided he first obtains the consent of the Board of Supervisors to the exercise of it.

Upon the theory that both Acts cannot have full and entire effect, it is argued on behalf of appellant that the powers granted by the Act of 1861 can be exercised in a limited and restricted degree in subordination to the law of 1857, and if so, then the power so conferred is to be construed as granted with the intention that its exercise shall be thus limited and restricted ; and thus it is sought to give effect to the former law as a limitation upon the power of the roadmaster under the latter to making contracts by which the county could only become liable to the extent of the income to the road,

fund of the year.  But this limitation necessarily withholds from the officer, *pro tanto*, the power given in terms by the junior law, and to that extent is an abrogation of the power granted.  We deem it unnecessary to extend the discussion further.  We see no reason to change our former opinion in the case, and the judgment must be allowed to stand, unless it be erroneous for some other cause.

The appellant has made an objection to the jurisdiction of the Court below on constitutional grounds, which, if tenable, demands a reversal of the judgment.  The objection is, that the Court below had no power to render the judgment in the case, on the ground that the Supreme Court only, had, at the time, jurisdiction in cases of mandamus.

In the enumeration of the powers of the Supreme Court, the fourth section of the Sixth Article of the Constitution as amended, among other things, declares, that " the Court shall also have power to issue writs of mandamus, certiorari, prohibition and habeas corpus, and also all writs necessary or proper to the complete exercise of its appellate jurisdiction."  By virtue of this provision this Court has exercised original jurisdiction in the cases enumerated ; but until now we have not had occasion to determine the question as to the jurisdiction of the District Courts of the State in the same class of cases. By the sixth section of the same Article of the Constitution as amended, it is provided that " the District Courts shall have original jurisdiction in all cases in equity ; also, in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, assessment, toll, or municipal fine, and in all other cases in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars."  The power to issue writs of mandamus, certiorari and prohibition, was not granted in terms to the Supreme Court by the old Constitution.  The power to issue all writs and process necessary to the exercise of its appellate jurisdiction was granted, and beyond this the Court never pretended to exercise jurisdiction by the use of this class of writs.  Nor did the old Constitution confer upon the Dis-

trict Courts, by terms of enumeration, power to issue these writs, but it granted to them "original jurisdiction in law and equity, in all civil cases, when the amount in dispute exceeded two hundred dollars, exclusive of interest." Under this general grant of jurisdiction, the District Courts exercised the power to issue writs of mandamus and certiorari, and heard and determined controversies between parties in the mode provided by law in this species of actions or proceedings. The Constitution as amended contains a more specific enumeration of certain powers of the District Courts than did the old Constitution, but it is quite as comprehensive in its general jurisdictional provisions as it was before it was amended. The old Constitution, as already appears, conferred on these Courts original jurisdiction in law and equity, in all civil cases where the amount in dispute exceeded two hundred dollars, exclusive of interest. The new Constitution confers like jurisdiction in all cases in equity, and also in all cases at law which involve the title or possession of real property, or the legality of any tax, impost, toll or municipal fine, and in all cases in which the demand, exclusive of interest, or the value of the property in controversy, amounts to three hundred dollars. That the District Courts rightfully exercised jurisdiction in this kind of cases under the old Constitution, has never been questioned. Their warrant for it was found in the provision of the Constitution to which we have referred—and that provision, as we have seen, is not more comprehensive than the general provision in the same section of the Constitution as amended. Then upon what ground can it be maintained that the District Courts have not the same jurisdiction in these cases now as under the old Constitution? It cannot be said that those who framed the amendments and the people who adopted them intended to withhold from the District Courts jurisdiction in this class of cases, for the palpable reason that the language of the section as amended embraces the subject as fully and completely as it was embodied in the Constitution before the change. If it had been intended the District Courts should not have this jurisdiction under the amended Constitution, it

is fair to presume that language would have been employed
relieving the question of the embarrassment of reasonable
doubt.   Nor can it fairly be intended that the District Courts
should be deprived of jurisdiction in cases of mandamus and
certiorari because the like jurisdiction was conferred in express
language upon the Supreme Court.   Before then the jurisdic-
tion of the Supreme Court on the subject was limited to the
issuing of such writs and process as were necessary to the
exercise of their appellate jurisdiction, and by the alteration
made, it was designed to clothe the Court, which before then
was a purely appellate tribunal, except as to a single subject,
with original jurisdiction in cases of mandamus, certiorari and
prohibition.   There was a reason for conferring power on the
Supreme Court to issue these writs.   Without a change of the
Constitution in this respect, instances of the failure of justice
for want of a remedy for the redress of injuries were liable to
happen, because of the want of a competent tribunal to issue
such writs.   To provide against contingencies of the kind
suggested, it is just to presume the power was granted to the
Supreme Court by the Constitution as amended to issue such
writs otherwise than in aid of its appellate jurisdiction alone.

   When the Constitution as amended was adopted by the
people, it must be presumed they knew what were the provi-
sions of the old Constitution as to the subject of the powers
of the Supreme Court and the District Courts, respectively,
and were informed as to the extent and effect of the changes
made, and also that it was not designed that the general lan-
guage of the sixth section of the Sixth Article of the Consti-
tution as it was amended, should be of less comprehensive
import than the same or equivalent words were in the original
instrument.

   At the time of the adoption of the amended Constitution it
had been decided in effect that the constitutional provisions
which conferred appellate jurisdiction on the Supreme Court,
in all cases where the matter in dispute exceeded two hundred
dollars, exclusive of interest, and which conferred in substan-
tially the same language, original jurisdiction on the District

Courts, were not to be understood as restricting the jurisdiction of such Courts only to those cases involving questions of property, or the legality of a tax, toll, impost or municipal fine. (*Conant* v. *Conant*, 10 Cal. 253.) In the case here referred to, Mr. Justice Field said : " It could never have been the intention of the framers of the Constitution to deny to the higher Courts, both original and appellate, any jurisdiction in that large class of cases where the relief sought is not susceptible of pecuniary estimation—such as suits to prevent threatened injury—respecting the guardianship of children—honorary offices, to which no salary is attached, and the like." Here we have a decision upon the text of the Constitution which contained no grant in express terms of the power to hear and determine the action, (which was divorce,) and which, we are satisfied, conformed to the exposition of the Constitution upon the subject, not only of the Courts in the administration of remedies in all that large class of cases where the relief sought was not susceptible of pecuniary estimation, but also of the legislative department from the time of the State's organization. Were we now to deny that under the provisions of the sixth section of the Sixth Article, as amended, the District Courts have not the authority to issue writs of mandamus and certiorari, we of consequence would have to decide, when the case might be presented, that they have no jurisdiction in cases of divorce, and further than this our judgment would be in effect a declaration that all judgments rendered in such large class of cases, since the Courts of this State were organized, were null and void, for the reason that they were *coram non judice*. Whatever might be our views of the subject, were it *res integra*, would not warrant us at this day in disregarding the exposition given to this provision of the Constitution by the Courts and the Legislature, and also by the people in the adoption of the amendments to the Constitution, without changing it in any essential particular as to the point under consideration.

In examining the constitutional question raised, we have considered not only the Constitution as amended, but also the

Constitution as it was before it was changed, as likewise the judgments of the highest Court in the State pronounced in subordination to its provisions, in order to discover the objects contemplated by the amendments of the organic law, and the extent and effect of the changes made ; and we are of opinion that, while the Supreme Court is invested with original juris- diction in the class of cases enumerated, the District Courts have the same powers over and respecting this species of remedy, as they possessed in like cases, under the original Constitution, and therefore we hold the objection of the appel- lant to the jurisdiction of the Court below to be invalid.

Judgment affirmed.

Mr. Justice SAWYER expressed no opinion on the rehearing.