CATLIN *against* THE SAVINGS BANK OF NEW-HAVEN and others.

On the 13th of *January* 1824, *A.*, a citizen of *New-York*, offered at the coun-
ter of the *Eagle Bank* in *New-Haven*, a certain amount of the bills of that
bank, and demanded payment thereof in specie.   The officers of the bank
offered to redeem these bills, by giving a draft for the amount on a bank in
the city of *New-York ;* which was refused.   The bills were then left with
the officers of the *Eagle Bank*, to be counted and paid.   Two days after-
wards, the president of the *Eagle Bank* forwarded a draft to an agent in
*New-York*, with directions to tender the amount of the bills in specie to *A.*
the next morning. This was accordingly done ; and the money was refused,
on the ground that two days' interest was then due.   Within a day or two
afterwards, *A.* again demanded payment of the bills, at the *Eagle Bank ;*
which was refused,on the ground of an alleged payment in *New-York ;* and
then he demanded the bills themselves,which were also refused,and were pur-
posely mingled with the redeemed circulation of the bank.  In *March* 1824,
*A.* sued the *Eagle Bank*, in an action for money had and received, and ulti-
mately (in 1827) recovered judgment for the amount of the bills and inter-
est.   On the 31st of *August*, 1825,  the affairs of the *Eagle Bank* being
desperate, the funds provided in *New-York* for the payment of the bills,
were withdrawn, and an  entry thereof was made on the books of the
bank.   On the 19th of *September* 1825, the bank failed.   On the 21st, the

*New-Haven,*
*July,* 1829.

Catlin
*v.*
Savings Bank.

president assigned a quantity of iron to trustees, first, to secure, to a certain amount, an indorser of the post-notes of the bank, and then, after paying the *Savings Bank* the amount of its deposites, " to pay all other persons who had ordinary or special deposites with the *Eagle Bank* the full amount of such deposites respectively." On a bill in chancery brought by *A.,* to obtain the benefits of the assignment, as a creditor of the *Eagle Bank,* by reason of an ordinary or special deposite of money with such bank, it was held, that the plaintiff did not sustain that character, and was, therefore, not entitled to the relief sought.

DURING the pendency of a bill in chancery, brought by the *Savings Bank,* the *Eagle Bank* and sundry depositors and creditors of the *Eagle Bank,* against *William W. Woolsey* and others, *Lynde Catlin* filed a cross-bill, which, in connexion with the cross-bill of *Homer* and others,(a) was tried before *Bissell,* J., at an adjourned term of the superior court at *New-Haven,* in *June,* 1829.

The case, as it appeared from the finding of the court, was this. On the 13th of *January,* 1824, the plaintiff, by his agent *Thomas Wiswall,* offered at the counter of the *Eagle Bank* in *New-Haven,* the sum of 91,762 dollars, 41 cents, in bills and notes of that bank, and demanded payment thereof in specie. An offer was made, by the officers of the bank, to redeem these bills, by giving a draft for the amount on the *Union Bank* in the city of *New-York.* This offer was refused. The bills were then left with the officers of the bank, for the purpose of being counted and paid. On the 15th of *January,* (the bills having then been counted) the offer to give the draft was repeated, and again refused. On the same day, the president of the *Eagle Bank* forwarded to *Prime, Ward & Sands,* its agents in the city of *New-York,* a draft on the *Union Bank* for 91,762 dollars, 41 cents, with directions to tender that sum in specie to the plaintiff early on the morning of the following day. This was accordingly done; and the money was refused, on the ground that two days' interest was then due. On the 16th of *January,* the plaintiff's agent demanded payment of said bills, at the *Eagle Bank,* which was refused; the reason assigned for such refusal being, that payment had been made to the plaintiff in the city of *New-York.* The agent then demanded, that the bills should be returned. This was also refused; and the bills were, purposely, mingled with the redeemed circulation of the bank. The moneys tendered to the plaintiff in

(a) Ante, p. 478.

*New-York,* remained in the hands of the agents of the bank, subject to his order, provided he would receive them in full of his demand, until the 31st of *August,* 1825, when they were withdrawn, and an entry thereof was made on the books of the bank, as follows : "CASH DR. To SUNDRY ACCOUNTS.

*August* 31, 1825. *Lynde Catlin* for *New-York* banks, *Dpt.* (*b*) $91,762 $\frac{41}{100}$ths. Check on *Union,* remitted *January* 15th, 1824."

This entry was transferred to the ledger thus :
" LYNDE CATLIN, CR.
*August* 31, 1825. By Cash—$91,762 $\frac{41}{100}$ths."

On the 2nd of *March,* 1824, the plaintiff brought his action for money had and received against the *Eagle Bank,* to recover said sum of 91,672 dollars, 41 cents, and interest thereon ; and at the term of the superior court for *New-Haven* county, in *January,* 1827, he recovered judgment for the sum of 108, 371 dollars, 41 cents, damages, and his costs.

On the 31st of *August,* 1825, the affairs of the *Eagle Bank* were desperate ; and on the 19th of *September* following, it failed, and ever since has been, and now is, deeply insolvent.

On the 21st of *September,* 1825, *George Hoadly,* president of the *Eagle Bank,* assigned a quantity of iron to *William W. Woolsey* and *George Griswold,* in trust, that after having sold it and converted it into money, and having paid and reimbursed the charges and costs incident to the trust, they should, in the first place, by and with the proceeds, or any moneys to be procured therewith, secure, indemnify and protect *William C. Holly* against and concerning any indorsements of his on the post-notes of the *Eagle Bank,* to an amount not exceeding 20,000 dollars ; and in the second place, pay the creditors of the *Eagle Bank* in the order and according to the priority following, *viz.* 1st, to pay to the *Savings Bank* the full amount of all moneys deposited, by that institution, in the *Eagle Bank;* 2ndly, to pay all other persons who had ordinary or special deposites with the *Eagle Bank,* the full amount of such deposites respectively, or if the proceeds should prove insufficient to pay and satisfy the last-mentioned depositors in full, then to pay and distribute the proceeds among such depositors according to the amounts of their respective deposites ; 3rdly, to pay and dis-

---

(*b*) It appeared, that the letters "*Dpt.*" were customarily used, by the clerks of the bank, as an abbreviation of the word *deposite.*

Catlin
v.
Savings Bank.

tribute the balance among the general creditors of the bank, *pari passu.*

The plaintiff claimed to stand in the predicament of a person having an ordinary or special deposite with the *Eagle Bank;* and the object of his bill was to obtain such share of the trust fund, so created, as a person in that predicament would be entitled to.

The case was reserved for the consideration of this Court.

*Sherman* and *R. S. Baldwin,* for the plaintiff, contended, That he was entitled to the benefit of the assignment, made by the president of the *Eagle Bank,* to pay all persons having ordinary or special deposites of money with that institution. In support of this general proposition, they urged the following considerations.

1. Wherever the property of an individual is by him intrusted to the custody of a bank, under such circumstances, that no interest in that property is acquired by the bank, and no right to retain it against the demand of the owner, nor any obligation incurred, *by reason of its being left,* other than that of keeping it safely, it is a special deposite. The bank, by receiving it, assume towards the owner, all the obligation of a *depositary.*

When a deposite has once been made and received, no subsequent act of the depositary, unless authorized by the owner, can change or affect the rights or obligations of the parties.

If the depositor, at the time of making his deposite, or afterwards, consented that the depositary might become the owner of the thing deposited, upon the performance of some future act, as for example, the delivery of some other thing, when demanded, in lieu of it, it would still continue to be a deposite until the equivalent was received.

If these positions are correct, the plaintiff, when the *Eagle Bank* bills were left, by his agent, to be counted, preparatory to a future exchange for specie, became, during the time those bills were in the course of being counted, a special depositor.

The bank acquired no interest in the bills, in consequence of their being left to be counted. The counting was for their own security, not for the benefit of the plaintiff. Although they were entitled to a reasonable time for that purpose, they could not require of the plaintiff, that during that time, the bills should be left in their custody. He might have remained at their

counter, and retained the possession of his bills, during the
process of counting.

As they were voluntarily entrusted, by him, to their custody,
the bank assumed the obligation of keeping them safely, using
ordinary care for that purpose. The bills continued to be the
property of the plaintiff; and if the bank had been *robbed*,
while they remained unmixed with its other redeemed circu-
lation, the loss would have been his. As the bills never were
in fact returned or paid for, the bank continued responsible to
the plaintiff, as for a special deposite, down to the period
when the assignment was made. A tender not accepted,
could not vest the title to the bills in the bank. The fact that
they had mingled these bills with their own, and had refused to
redeliver them when demanded, could not alter the character
of the original transaction, although it might subject them to
the payment of interest on the deposite, to which otherwise
they would not have been liable.

The bank, in creating a trust for the payment of *special de-
positors,* must have had in view, cases where they had disabled
themselves, by making use of the deposite,from a redelivery of
it specifically ; otherwise, the provision was wholly unnecessary
and useless; since each depositor, if his deposite remained in
specie, was entitled to reclaim it.

2. If it be not admitted that the plaintiff was a *special* de-
positor, he is clearly entitled to claim under the assignment as
an *ordinary* depositor.

It will not be denied, that at the time of the assignment, the
*Eagle Bank* owed the plaintiff a *debt,* for money before that
time received to his use ; but it may be said, that that debt
was not a *deposite.*

What then is it, that distinguishes, by giving to them the
name of depositors, one class of the creditors of a bank from
another ? The bank is equally indebted to both, and aside
from circumstances like those which exist in the present case,
it makes no difference with respect to the security of the cred-
itor, whether his debt is regarded as a deposite or not.

We are not, therefore, in ascertaining the meaning of the
term *deposite*, to regard it as indicating a debt of any higher
obligation than any other debt. Every bill-holder has as really
money in the bank to his use, as he who has made a deposite
there ; and both debts are of equal obligation. The only differ-
ence is, that one has an ascertained credit with the bank, for

which he has a right to draw";—whereas the other is entitled to no credit, and can only receive pay upon producing his bills.

In keeping the accounts of a bank, it is necessary, that all its indebtedness should, in some form or other, appear on its books. But it is impossible, that its books can indicate who all its creditors are. Those who hold bills or other securities of the bank, cannot, of course, be individually credited on its books; since they might, at the next moment, cease to be creditors, by paying away their notes. It would be the same if they had presented their bills, and had the amount ascertained;—if they still retained them in their possession, they would not be entitled to a credit.

The only account which a bank can keep with bill-holders, is in the aggregate, in which the bank is made " *Dr. to circulation.*"

But those to whom a bank is indebted for money in a liquidated amount, who hold none of its securities to represent their debt, are, and must be, entitled to a credit on its books; and these, by the usage of banks, are termed *depositors.*

An ordinary deposite, then, as distinguished from the other debts due from a bank, may be defined to be " any ascertained debt due from a bank to an individual or other corporation, for which such individual or corporation has, or ought to have, a credit for money on its books, and a right to draw at pleasure."

Every person whose money is intermingled with the general funds of the bank, to an ascertained amount; who is acknowledged, by the bank, to be a creditor to that amount; who is under no obligation to permit it to remain there, and who holds no security to represent it, is entitled to a credit on its books, to draw out the amount at pleasure, and whether actually credited or not, to be treated as a depositor. This accords with the well known usage of banks. All these requisites exist in the case of the plaintiff. 1. He has a *debt;* 2. of an ascertained amount; 3. for which he has a right to demand payment at any time; and 4. for which he holds no security, which can be negotiated to the prejudice of the bank. In addition to the foregoing, in *August*, 1825, the plaintiff was credited with cash to the amount of 91,762 dollars, 41 cents, on the books of the *Eagle Bank*, and was treated in the account of the bank, like any other depositor.

There was no dispute between him and the bank as to the *amount* of his *deposite.* The only difference between them was, whether by the tender, they had disabled him from claiming interest.

The books of the bank were before the directors, when they <span>*New-Haven*,<br>July, 1829.</span> made and ratified the assignment. They are necessarily re-<br>ferred to, in that instrument ; and we have a right to regard it <span>Catlin<br>*v.*<br>Savings Bank.</span> as their intention to place the plaintiff's debt on the same foot-<br>ing with that of their other depositors.

The object of the assignment was to give a preference to those creditors, who had no transferable securities to represent their debts, and who were therefore exposed to greater loss than the bill-holders, who might sell at the market value.

The plaintiff never dissented to the entry on the books of the bank. When a trust is created, or an act done for the benefit of a third person without his knowledge, he may afterwards affirm and enforce it. The plaintiff, as soon as he knew of it, came to enforce it.

*N. Smith* and *Hitchcock*, for the defendants, resisted the claim of the plaintiff, insisting, that he was not entitled to the benefit of the assignment, either as a *special* or an *ordinary* depositor.

A bank deposite, they remarked, is a credit, which a person voluntarily takes with a bank, with its consent, and for which no note, bond or other similar evidence of debt, is holden : Or, it arises when the relation of debtor and creditor is mutually agreed to be assumed by the parties, and no note &c. is holden therefor, by the depositor. In either case, it is essential to constitute a deposite, that the depositor actually placed his money with the bank for safe-keeping. A general or ordinary deposite entitles the depositor to claim of the bank its bills or specie, on demand first made, in payment of his claim, without condition or limitation. A special deposite is a specific thing entrusted to the bank for safe-keeping only, and to be specifically returned.

They then contended, That the facts found did not disclose the relation of either *ordinary* or *special* depositor. In the first place, the plaintiff came for pay only as a hostile creditor. Secondly, he refused pay, when offered, except in specie. Thirdly, the plaintiff demanded interest for a delay of payment two days. Fourthly, the plaintiff, refusing his pay, demanded his bills ; and then sued the bank, and and recovered judgment for the debt and interest. Fifthly, the bank received the bills to count and pay only. If the bank fulfilled that engagement, it became the owner of the bills ; if it did not fulfil, the bills were the plaintiff's. Sixthly, before the bills were demand-

ed, the bank had intentionally mixed them with its own. From these facts it is apparent, that the bank did *not receive* the bills as an ordinary or special deposite ; and that the plaintiff did not *consider* himself as having any such deposite with the bank, until long after the relation of the parties, and the rights growing out of that relation, were fixed. There are no facts in the case in conflict with this understanding of the parties ; but, on the contrary, all the facts are in perfect harmony with it. The entries made by the clerks in the books of the bank, were only for the purpose of keeping the account of their cash, and did not affect the relation of the parties.

From the whole case it appears, that the plaintiff is now entitled only as a bill-holder, who has recovered judgment for his debt and interest.

BISSELL, J. The question arising upon the facts in this case, is, whether the plaintiff is entitled to the benefits of the assignment, as a creditor of the *Eagle Bank, by reason of an ordinary or special deposite of money in the bank?* And here it is obvious to remark, that this assignment was not *intended* for the benefit of the plaintiff. The leading object of the assignors, was, to secure what was deemed by them to be a meritorious class of creditors ; such as had reposed a special trust and confidence in the bank. And it is very apparent, that the plaintiff could in no sense be considered, by them, as falling within this class of creditors. It is equally certain, that he did not regard his claim on the bank as growing out of a deposite of moneys therein. Every fact in the case precludes such an idea. Every proceeding on his part was of a decidedly hostile character. The object, in the first instance, was, obviously, to produce, what is called *a run* upon the bank. His refusal to accept the draft, to receive the money when tendered, and the following up that refusal, by a suit at law ; all exhibit him in the character of a hostile creditor only. Such was his attitude when the assignment in question was executed. If then, he be entitled to come in as a favoured creditor, upon this fund, contrary to the intentions of the assignors, and opposed to the character, which he had uniformly sustained, in relation to the bank, it must be by force of some technical magic in the term *deposite*. I do not think there is any such magic in the term. And although the plaintiff may have been, and doubtless was, a *creditor* of the bank ; yet he was not

such, by reason of any special or ordinary deposite of moneys therein. <span style="float:right;"></span>

Was he a creditor by reason of a *special* deposite ? A special deposite of money in a bank, I understand to be, where moneys (as bills in packages, or specie in boxes, for example,) are entrusted to the bank, not to be used, but to be kept safely, and specifically returned. There was clearly no such deposite. The bills were not left for safe-keeping ; nor were they to be returned specifically. The object was payment ;— and the counting was merely incidental to this. The mingling of the bills with the redeemed circulation of the bank, cannot affect the principle. This, under the circumstances, might have been, and probably was, a tortious conversion, and trover might have been maintained.

It has, indeed, been urged, that the moment the money was delivered to be counted, it became a special deposite, and so remained when the assignment was executed. It is sufficient, in answer to this argument, to observe, that it requires us to affix a meaning to the term, *special deposite,* not sanctioned by usage ; and at the same time, by thus extending its meaning, to defeat the manifest intention of the parties to the instrument. This I do not think, we are at liberty to do.

Again : The charter of the *Eagle Bank* provides, that "The debts of the corporation, whether by bill, bond, or note, shall not, at any time, exceed fifty *per cent.* over and above the total amount of capital stock actually paid in, and of the moneys deposited in the bank for safe-keeping." Now, can it be contended, upon a sound construction of the charter, that the bank would have had a right to make this sum of 91,762 dollars, 41 cents, the basis of indebtedness to fifty *per cent.* beyond its amount ? This surely cannot be contended for. This, therefore, was not a *special* deposite.

And there is still less ground to contend, that the plaintiff was a creditor, *by reason of an ordinary deposite of moneys in the bank.* An ordinary bank deposite is where a voluntary credit is taken with a bank ; and for which no bank note, bill, or similar evidence of debt is given ; and for which there exists a right to draw unconditionally. In every such case, a special trust and confidence is reposed in the bank. The assent of both parties is essential to such a deposite ; it carries no interest ; and no action lies for it, until demand made and refusal. Now, every fact in the case before us, decidedly ne-

gatives the idea of such a deposite. There was no confidence reposed. The plaintiff never, voluntarily, took a credit with the bank. He demanded, and eventually recovered interest upon his claim.

The assignment was made pending a suit, brought by the plaintiff against the bank, and when both parties, in relation to each other, maintained the attitude of determined hostility. It is very clear, then, that on the 21st of *September*, when the deed of assignment was made, the plaintiff was not a creditor, *by reason of an ordinary deposite of moneys in the bank*, unless he became such by the entry made on the books of the bank on the 31st of *August* preceding. That entry, surely, could not have the effect of changing the nature of the plaintiff's demand. It was not made with that view. He never consented, that it should do so. On the contrary, he continues to prosecute his action, and eventually recovers judgment for the amount of his demand, with interest. Not having reaped the fruits of that judgment; he now asks to change his character from that of a hostile, to that of a favoured and confidential creditor; and thus to be let in upon a fund, obviously never created for his benefit. This, in my opinion, cannot be done. I would, therefore, advise the superior court, that the plaintiff's bill be dismissed with costs.

HOSMER, Ch. J., was of the same opinion.

PETERS, J. being interested in the event of the suit, and DAGGETT and WILLIAMS, Js., having been of counsel for other claimants under the same assignment, gave no opinion.

Bill to be dismissed.(*c*)

(*c*)See note to *United Society* v. *Eagle Bank*, ante, 476.