# Frazier *against* The Erie Bank.

If an agent procure the note of his principal to be discounted, and deposit the proceeds in bank to his own credit, the principal may maintain an action therefor against the bank in his own name, notwithstanding the bank, after notice, had paid the money on the check of the agent.

ERROR to the Common Pleas of *Erie* county.

John L. Frazier against The Erie Bank. This was an action

[Frazier v. The Erie Bank.]

on the case, the facts of which are fully stated in the opinion of the Court.

*Marshall*, for plaintiff in error.
*Babbit*, for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—Prentice and Struthers drew two drafts, one for $600, the other $1000, on John Mitchell, Esq., superintendent on the Erie Canal, payable to the order of James Struthers. The drafts were accepted by Mitchell, payable when State funds were received. James Struthers, the payee, being largely indebted to the plaintiff, either in payment of the debt, or as a collateral security, handed over the two drafts to him. James Struthers was the holder of other notes of a similar description. The Erie Bank was in the practice, when in funds, of cashing these notes in relief paper; and, aware of this, Frazier advised Struthers, for what reason does not appear, to place the drafts in the hands of R. H. Rees for collection and negotiation with the Bank. Struthers endorsed the notes, handed them over to Frazier, and he gave them to Rees. Rees, on his return from the Bank, represented that, for reasons which he stated, he could not draw the money for two or three days; advised Struthers and Frazier to go home, and that he would receive the money and would bring it to them. It subsequently appeared that Rees received $600 on the draft, and also a draft on a Mr Newton, of Warren county, for $784. This draft he handed to Frazier, who received the same in par funds. The money remaining due on the drafts was passed to the credit of Rees on the books of the Bank. A few days afterwards, Struthers being informed that Rees had failed, called, in company with Mr Abell, who was the agent of Frazier, on the cashier of the Bank, who informed them of the above stated facts. They then told the cashier distinctly that the drafts did not belong to Rees, but to Frazier; that Rees was but the agent for the collection of them; and at the same time Abell presented an order from Frazier for the drafts. Mr M'Sparen, the cashier, refusing to deliver the drafts to Abell, he requested him not to pay the money over to Rees, but to hold it for Frazier; and he agreed to do so. The cashier further told Mr Abell that if Frazier would get Mr Rees's check, they would pay him the balance. This Frazier afterwards procured, and presented it for payment, when he was informed that Kellog & Clark had attached the money as the property of Rees, and that the Bank could not pay it until the attachment was disposed of. The attachment was afterwards discontinued; but, before it was discontinued, in utter disregard of the promise to Abell, they settled with Rees, and refused to pay Frazier, who again presented the check. Rees, when he presented the drafts, represented them as his own property.

[Frazier v. The Erie Bank.]

If the above be a true representation of the evidence, it appears that Frazier was the owner of the drafts, and of course entitled to the proceeds. Rees stands in the situation of a fraudulent agent, guilty of a gross breach of trust. Of this state of facts, the Bank had full and ample notice. It must be remarked that there is no reason to believe that, at the time, the cashier or any officer of the Bank were aware of the real nature of the transaction. There is nothing to implicate them in the fraud. No exception, therefore, can be taken to the payment of $600, or to a credit for the proceeds of the draft as received by Frazier. To that amount, therefore, the defendant is entitled to a credit. For what remains, after making this deduction, this suit can only be maintained; and whether the plaintiff can recover that, was the difficulty made in the District Court. The view of the learned Judge is not very obvious; but he seems to have been of the opinion, and has so instructed the jury, that as the balance of the drafts was placed to the credit of Rees, no person but he can receive it; that this suit against the Bank, who are depositaries of the money, can only be sustained in his name. To this direction I totally dissent. This suit is properly brought in the name of the owner of the money; and to whom does it belong but to Frazier, who was the owner of the drafts? Rees was but an agent for a special purpose, and he acquires no property in the drafts or their proceeds as against his principal, and certainly he can acquire none through the medium of a fraud; and why it should be necessary to use the name of a fraudulent agent, who has no claim or pretence of claim to the money, I cannot imagine. It is a suit by the owner to recover money in the hands of a third person, who holds it, after notice, for his use. A merchant sends his clerk to deposit money in bank, and instead of depositing it in the name of his employer, he deposits it in his own name: would a payment to the clerk, after having notice of the fraud, protect the bank from the suit of the principal? Would it be necessary to bring suit in the name of the clerk? This will not be pretended; for to whom does the money belong? Surely not to the clerk, but to the principal; and as soon as the bank are informed of the fraud, they become stakeholders, and must pay the money to the person entitled to it.

Again: A merchant sends his clerk with a check to draw money out of bank for the ordinary purposes of his business. The clerk draws the money and deposits it in his own name. Of this, the the bank in due time has notice. To whom are they bound to pay the money? to the fraudulent clerk or the owner? Can it be that by the fraudulent transfer of the funds to himself, he acquires such a property as that he only can receive it, and that it can be only received in his name? It is true that until the bank has notice, they may consider the agent as the owner of the funds; but when they are informed the money belongs to the principal, they are, as in justice they should be, placed in a different situation. They

[Frazier v. The Erie Bank.]

are stakeholders for the owner, and must at their peril pay it to him; and to protect themselves, they may require an indemnity. If, therefore, on another trial, the jury should believe that the drafts were transferred by Struthers to Frazier, that Rees was an agent for the collection, and that the bank had notice of it before payment, the suit is properly brought, and the plaintiff is entitled to receive the money which remains, after deducting the $600 and the proceeds of the draft on Newton.

We also think that the court erred in the answer to the fifth point. Unless there was a special agreement to that effect, the defendants are not entitled to a credit for the difference between the par value of the draft on Newton, and relief State funds. The presumption is, that it was received as a payment for the amount expressed on the face of the draft, and no more. If it be otherwise, the special agreement must be proved by the Bank; the onus is thrown upon them.

Judgment reversed, and *venire de novo* awarded.