## Case No. 16,989.

### VOIGHT v. LEWIS.

[14 N. B. R. 543; 11. Phila. 511; 33 Leg. Int. 402; 9 Chi. Leg. News, 65; 11 Bankers' Mag. (3d S.) 481; 3 N. Y. Wkly. Dig. 421; 24 Pittsb. Leg. J. 54.] 1

Circuit Court, E. D. Pennsylvania. Oct. 26, 1876.

#### BANKRUPTCY — BROKERAGE BUSINESS — RIGHTS OF CUSTOMERS.

If the bankrupts, in addition to their other business, carried on a brokerage business, for which they kept a separate account and a separate bank account, a party whose bonds were sold is entitled to payment in full, if the amount in the bank is more than sufficient to pay all claims against the brokerage department.

In bankruptcy.

George M. Dallas, for complainant.

R. L. Ashurst, for defendant.

McKENNAN, Circuit Judge. If the fund in controversy did not belong to Jay Cooke & Co. at the time of their bankruptcy, no property in it passed to their trustee; and if they could not gainsay the right of the plaintiff to demand and recover it from the bank in which it was deposited, their trustee, who has to receive it, cannot now withhold it. Its origin is clearly established by the proof. It was the product of the sale, by Jay Cooke & Co., as the brokers of the plaintiff, of two thousand dollars of Reading Railroad general mortgage bonds, and it was received by them, not as their own or for themselves, but for the use and benefit of the plaintiff. Their relation to the plaintiff, then, was strictly fiduciary, and in virtue of it alone were they recipients and holders of the proceeds of the sale of his bonds. As the successors of Jay Cooke & Co., only their right to this fund passed to their trustee, and he took it, therefore. impressed with the same character, and subject to the same equities, which resulted from their relation to the beneficial owner of it. But it does not follow, from the fact that Jay Cooke & Co. received the fund in question in trust for the plaintiff, that he is entitled to the relief which he now seeks. This will depend upon whether they made any appropriation of it, so that it would not be individuated and its identity clearly traced. It is undoubtedly true that a trust fund which has been so intermixed with the money of the trustee that it cannot be followed, cannot be recovered specifically by the cestui que trust. But, as was said by Mr. Justice Strong. in Farmers' & Mechanics' Nat. Bank v. King, 57 Pa. St. 202, "It is undeniable that equity will follow a fund through any number of transmutations, and preserve it for the owner so long as it can be identified. And it does not matter in whose name the legal right stands. If money has been converted by a trustee, or agent, into a chose in action, the legal right to it may have been changed, but equity regards the beneficial

ownership." Even at law it has been decided that a principal might maintain an action to recover from a bank the proceeds of a discount of his own note which were placed to the credit of his agent, and which the bank, at the time of the deposit, had no notice did not belong to the agent. Frazier v. Erie Bank, 8 Watts & S. 18. But it is not essential to the effective assertion of a beneficial title to a trust fund that the fund shall be susceptible of separate identification. No more is required than proof of substantial identity. Money has no ear-mark by means of which it can be specifically identified. Into whatever form it may be changed, if it can be clearly traced, equity will rescue it from a wrongful appropriation, and give effect to the right of its real owner. An ear-mark is only a means of identification, but is not evidence of ownership. It "is not indispensable to enable a real owner to assert his right to property, or to its products or substitute. Evidence of substantial identity may be attached to the thing itself, or it may be extraneous. * * * But in regard to money, substantial identity is not oneness of pieces of coin or bank bills. If an agent to collect money puts the money collected into a chest where he has money of his own, he does not thereby make it all his own, and convert himself into a mere debtor to his principal. The principal may, by law. claim out of the chest the sums which belonged to him before the admixture." Farmers' & Mechanics' Nat. Bank v. King, supra.

Nor will the placing of a fund. received by an agent or a trustee, in an independent depository to his individual credit, even where it is mingled in the account with his own and the money of other trusts, work a confusion of these funds, and defeat the right of a beneficial owner. So it was held in Pennell v. Deffell, 23 Eng. Law & Eq. 460, and Mr. Justice Strong, in Farmers' & Mechanics' Nat. Bank v. King, referring to this case with decided approval, says of it: "It was a contest between an official assignee in bankruptcy and insolvency, and the executors of a prior deceased assignee, who had kept an account with bankers, into which he had paid his own money as well as moneys of the trusts. The accounts were not distinguished as official accounts, but were opened in the depositor's own name. There was nothing to show that he was not alone interested in the sums due from time to time from the bankers." Lord Justices Knight-Bruce and Turner, held that the assignee was entitled as against the executors of the depositor. The former said that "when a trustee pays money into a bank to his credit, the account being a simple account with himself, not marked or distinguished in any other manner, the debt thus constituted from the bank to him is one which, as long as it remains due, belongs specifically to the trust, as much and as effectually as the money so paid would have done had it specifically been placed by the trustee in a particular repository and so remained." There is much more in the case.

1 [Reprinted from 14 N. B. R. 543, by permission. 3 N. Y. Wkly. Dig. 421, contains only a partial report.]

It is particularly to be noticed that the moneys of several distinct trusts were carried into the account; that the trustee's own money had been mixed with them, and that a rule was laid down for determining what belonged to the trusts, and what to the depositor.

Applying these principles to the facts proved in this case, the right of the complainants to the relief prayed for seems to be free from doubt. Jay Cooke & Co. were brokers, and their business of this character was carried on in a department which was specially in charge of one of their employees, and was distinct from the other departments of their business. Separate books of account were kept in it, in which were entered each transaction of the firm pertaining to the purchase and sale of stocks, bonds, and other securities on commission. All moneys arising from these operations were deposited in the Seventh National Bank in the name of the firm, and this amount was drawn upon exclusively to answer demands in the brokerage department. The proceeds of the sale of the complainant's bonds were carried into this account, and remained there at the time of the failure of the firm, at which time there was a balance to their credit, more than sufficient to pay the charges in the books against the brokerage department for moneys received and deposited in the bank.

Under these circumstances it cannot be gainsaid that the money received by Jay Cooke & Co. for the complainant's bonds entered into and constituted a part of the deposit in the Seventh National Bank. Its origin and amount are positively determinable, and it can, with like certainty, be traced into that account. On this point the clerk who had charge of the brokerage department testified: "I could take the records of sales and the deposit-book, and trace up the money of Mr. Voight: for instance, show that it had been deposited in the Seventh National Bank, and remained there."

The substantial identity of the complainant's money is thus completely established. It did not exist in its original form, and, therefore, could not be identified in specie; but the distinctiveness of its substitute is unquestionable. If it had been converted by its agents into a specific security, equity would lay hold of it and control its appropriation for his benefit—not because it could be individuated, but because it could be identified as the product of his property—and he was therefore to be treated as its rightful owner. This result will not be changed by the fact that it has been transmuted into the form of a credit in a bank in the name of the agents themselves. It may be, and has been, traced by extraneous evidence into the bank account as clearly as if a promissory note had been substituted for it. True, it is undistinguishable, in the face of the account, from other trust funds and moneys of the agents which were carried into the account; but as the complainant's proportion of this credit is definitely ascertainable, and so separable from that of the other beneficial owners of it, it will be administered by a court of

equity as belonging to him, just as effectually as if the money which it represented had "specifically been placed by the trustee in a particular repository, and there remained." Pennell v. Deffell, sup a.

Let a decree, therefore, for the complainant, according to the prayer of the bill, be prepared.