## McDermott *versus* Miners' Savings Bank.

A., upon the death of his wife, was unable to find his bank-book which she had had in her charge. He at once called at the bank and notified the cashier not to pay out any of his money there deposited. The cashier then informed A. that his wife had deposited part of the money in her own name, and advised him to procure some one to act as administrator of his wife's estate. Some time after, A. accordingly procured B. to act as administrator, and upon B.'s demand, the bank paid to him the whole sum standing to the credit of his wife. Subsequently, A., without waiting for the filing of an account by B., brought an action against the bank to recover the amount paid out by it as aforesaid. *Held,* that as the money was paid by the bank to B. as administrator with the consent and by the procurement of the plaintiff, the latter was estopped from setting up any claim against the bank, and was relegated to the position of a creditor of his wife's estate.

April 11th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Luzerne county:* Of July Term 1881, No. 75.

Assumpsit, by John McDermott against the Miners' Savings Bank of Pittston, to recover $4,840.73, being the balance of an account standing in the name of his deceased wife.

On the trial, before Woodward, J., the facts appeared to

[McDermott *v.* Miners' Savings Bank.]

be as follows :   The plaintiff, John McDermott, an uneducated man but doing a large business as a butcher for some years prior to 1875, kept a deposit account with the bank defendant.   His wife attended to the book-keeping and banking department of his business, signing checks, and making deposits in his name, by his authority.   She also kept a savings account in said bank in her name, to which account she from time to time transferred monies from the deposit account in her husband's name. The charter of said savings bank authorized deposits by married women and provided that the same should be repaid to them upon their check or receipt.

The wife died April 29th 1875.   Plaintiff immediately made search for his bank-book, and failing to find it, went to the bank and notified the cashier Mr. Bryden " not to pay any money to any one that comes here with them books until I find them."   The cashier replied, "All right, John.   Did you know that that money was deposited in your wife's name ? Plaintiff exclaimed, " My God, is that so ?   What am I going to do ?"   Bryden answered, "You will have to administer to it. No one can draw the money but an administrator appointed by the court."   At plaintiff's request, H. R. Hughes agreed to act as administrator of Mrs. McDermott's estate, and letters of administration were granted to him in May 1875.   In July following, the bank, upon demand of said administrator, paid to him the balance standing to the credit of Mrs. McDermott, deceased. The administrator filed his account in November 1877, which was confirmed, and John McDermott presented his claim in the Orphans' Court.   It did not appear that said claim has been adjudicated.   McDermott brought this suit against the bank in April 1878.

The court instructed the jury, inter alia, as follows :—

" Taking as true, all of the evidence on the part of plaintiff, looking at it in the most favorable aspect for him which the court is able to, I am bound to say to you, as matter of law, that I do not think the plaintiff can recover against this bank for the amount of money in question.   I believe the proper place to dispose of the question here raised is either in the Orphans' Court itself, or in the Court of Common Pleas under an order and issue directed by the Orphans' Court.   It seems to me that the bank, under all of the circumstances of the case, could properly do no otherwise than they did do.   Finding an account upon their own books standing in the name of a woman who had herself brought the money to the bank, produced the book from time to time and had the credits entered in it, the bank could do no less than pay over to her legal representative upon proper demand, the money so deposited.   This savings bank, like many others, is authorized to receive the savings and

[McDermott v. Miners' Savings Bank.]

money of minor children and of married women. In our opinion, under all of the circumstances, the savings bank would not have been justified, even if they had more distinct notice than is claimed here, and at a different point of time from that claimed, in withholding this money from the legal representative of the deceased wife.

"We say to you secondly, as matter of law, that in our opinion the plaintiff is estopped in this case from recovering against this defendant; because by his own testimony it appears that he was instrumental in raising up this administration for the very purpose of having the money in question transferred to the custody of the administrator instead of the bank.

"We hold, therefore, first, that the bank did right in paying the money over to the administrator. Second, that if the bank was wrong in thus paying it over, if there is a question as to the legality of the transaction, this plaintiff is estopped from setting it up here under the circumstances of this case; because he assented to it, and took means to bring about the result which was reached. While it seems quite probable, that in equity and justice this husband owned a share, if not all, of that money, and while it may hereafter in a proper way, and before a proper tribunal, appear that such is the case, we still hold he is not in a position, for the reasons already given, to recover in the present action against this bank.

"It only remains to say to you, that under these views, your verdict should be in favor of the defendant."

Verdict and judgment for the defendant. The plaintiff took this writ of error, assigning for error, inter alia, the portion of the charge above quoted.

*Q. A. Gates* and *H. B. Payne*, for the plaintiff in error.

*A. T. McClintock* and *Geo. S. Ferris* (*John Lynch*, with them), for the defendant in error.

Mr. Justice PAXSON delivered the opinion of the court, May 1st 1882.

The twenty-eight assignments in this case disclose no substantial error. It may be conceded that the money in the savings bank standing to the credit of Mary McDermott might have been shown to have been the money of her husband John McDermott, if the fact were so. There are numerous cases which hold that if the money of A. is by fraud or mistake deposited in a bank to the credit of B. the true owner may reclaim it, and that a payment to B. after knowledge of the facts and a distinct notice not to pay, would not protect

the bank : Frazier *v.* The Erie Bank, 8 W. & S. 18 ; Stair *v.* York National Bank, 5 P. F. S. 364 ; The Farmers' & Mechanics' National Bank *v.* King, 7 Id. 202 ; First National Bank of Wellsborough *v.* Bache, 21 P. F. S. 213.

The allegation of plaintiff was that his wife had kept his books, and without his knowledge had deposited several thousand dollars of his money to her own credit with the savings bank, defendant. The plaintiff says in his testimony : "My wife died April 29th 1875 in the forenoon, I looked around where I kept my bank-books. I seen they were gone. I could not find them, and I went right up to the Miners' Savings Bank, and I notified Mr. Bryden in saying : Is this Mr. Bryden ? My wife is dead, and I cannot find my bank-books, nor the certificate of deposit, and I don't want you to pay any money to any one that comes here with them books, or upon that certificate, until I find them. Says he to me, All right, John ; did you know that that money was deposited in your wife's name ? And I said, My God, is that so ?"

Had the plaintiff stood upon this notice, the bank would have paid out the money at its peril. But a few weeks thereafter, the plaintiff procured some one to administer upon his wife's estate, for the very purpose of receiving the money from the bank. He says in his testimony : "I got Mr. Hughes to be administrator, so that he could draw the money out of the bank." It was understood between the plaintiff and the bank, that he should do this ; in fact, it appears that the cashier advised it. We, therefore, must regard the notice to the bank as waived. The money was paid to the administrator with the consent of the plaintiff, and by his procurement. It is too plain for argument, that after such payment he had no claim against the bank. He was turned round to the position of a creditor of his wife's estate, and as such creditor, he had a right to pursue his claim in the Orphans' Court.

It may be the cashier gave the plaintiff bad advice. It would have been wiser to have consulted a lawyer. Conceding the plaintiff to have been misled, the bank is not responsible. It was no part of the business of the cashier to give advice to the customers of the bank upon questions of law, and there is neither reason nor authority for holding the bank responsible for such advice. Aside from this, the letters of administration were not taken out for some weeks after this conversation with the cashier, and there was ample opportunity for the plaintiff to have taken advice from some one learned in the law, and thus have ascertained his rights. It would be unfair to throw the consequences of his neglect upon the bank, which appears to have acted towards him in entire good faith.

Judgment affirmed.