Peoples Bank, Appellant, v. McDowell Natl. Bank.

242

Argued April 15, 1931.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Drew, JJ.

*Thos. H. Armstrong,* for appellant, cited: McKinley v. Wainstein, 81 Pa. Superior Ct. 596; Farmers Deposit National Bank v. Penn Bank, 123 Pa. 283.

*Louis J. Wiesen,* for appellee, cited: Federal Reserve Bank v. Early, 30 Fed. (2d) 198; Carson v. Federal Reserve Bank, 254 N. Y. 216.

OPINION BY LINN, J., July 8, 1931:

During the afternoon of January 17, 1929, pursuant to section 21 of the Banking Act, 1923, P. L. 809, 7 PS section 21, the secretary of banking took possession of the Peoples Bank, a Pennsylvania corporation, engaged in the general banking business at Farrell, Pa. He proceeded to liquidate its affairs pursuant to the statute. At that time the Peoples Bank had an open account deposit of $2,423.79 with the McDowell National Bank at Sharon, Pa. The secretary demanded payment of the deposit; in response to the demand, the bank tendered $1,209.21 in full, claiming a right to set-off the balance against the deposit in circumstances to be stated. The secretary refused the tender, denied the right to set-off, and brought this suit for the entire deposit.

The parties agreed to the facts in the form of a case-stated. The learned trial judge sustained the right of set-off asserted by defendant, and entered judgment for the plaintiff for the amount that had been tendered; from that judgment, plaintiff appeals.

The judge narrated the following facts from the case-stated: "Prior to January 15, 1929, certain checks drawn on the Peoples Bank by customers of

said bank having sufficient checking account balances, were presented to the McDowell National Bank by the payees or makers, and the checks were cashed or credited to the holders' accounts. On January 15, 1929, these checks bearing endorsement of the McDowell National Bank were forwarded to the Federal Reserve Bank of Cleveland for the purpose of collection, and on January 16 the Federal Reserve Bank of Cleveland, through its Pittsburgh branch, forwarded the checks to the Peoples Bank of Farrell for payment. In the forenoon of January 17, 1929, the Peoples Bank received presentment of the cash letter containing the checks aforesaid, and the checks aggregating $1,214.58 were honored and charged to the accounts of the respective drawers on said Peoples Bank. On the same day the Peoples Bank sent its check, or draft, on the First National Bank of Pittsburgh, payable to the order of the Pittsburgh Branch of the Federal Reserve Bank of Cleveland, in payment for its obligation of said checks. Said check, or draft, was received by the Pittsburgh Branch of the Federal Reserve Bank of Cleveland on January 18, 1929 after the close of Clearing House operations for that day, and on the following day said check or draft, was presented for payment to the First National Bank of Pittsburgh, and was dishonored for the reason that payment was stopped by the receiver [secretary of banking in charge] of the Peoples Bank of Farrell. The Pittsburgh Branch of the Federal Reserve Bank of Cleveland assigned to the McDowell National Bank of Sharon the $1,214.58 interest in the dishonored check or draft on the Peoples Bank."

The McDowell bank was a member of the Federal Reserve Banking system and therefore governed by its regulations. Attached to the case-stated, was "Regulation J, Series of 1924, check clearing and collection," providing the terms and conditions on which

Federal Reserve Banks would handle checks in circumstances disclosed here. According to those regulations, the Federal Reserve Bank to whom the defendant sent the checks drawn on the Peoples Bank for collection, acted as agent for the defendant; and, in the performance of its agency, was authorized by the regulations to send the checks direct to the drawee bank and take its check or draft in payment; (see discussion of such regulations and their effect in Carson v. Federal Reserve Bank, 254 N. Y. 218; and Fed. Res. Bank v. Early, 30 Fed. (2nd) 198, affirmed 281 U. S. 84). When the Federal Reserve Bank received the check of the Peoples Bank on the First National Bank of Pittsburgh for $7,891.25 (which included payment of defendant's total $1,214.58 of the checks that had been drawn on the Peoples Bank), it held and received that check as agent for the defendant to the extent of defendant's interest. The learned judge below rightly concluded that, as the Federal Reserve Bank was defendant's agent in making the collection, defendant thereupon became entitled, on its books, to charge the deposit account of the Peoples Bank with the total of the checks presented to the Peoples Bank for collection before it closed, the Peoples Bank having charged to the accounts of the respective drawers the amounts of their checks.

Appellant contends in this court: 1, that since the checks drawn by Peoples Bank depositors were paid, when presented, they ceased to exist, and, thereafter, that bank's only live obligation was its check or draft given to the Federal Reserve Bank; 2, that the only right to recover on that draft is in the Federal Reserve Bank, the alleged owner; 3, that under the Act of 1913, P. L. 294, 7 PS section 489, in the course of liquidation, the Federal Reserve Bank as the owner of the check or draft may, on distribution, receive a depositor's preference and no more. Appellant also

presents a minor contention that the assignment to defendant by the Federal Reserve Bank of an interest of $1,214.58 in the check or draft, gave no right to set-off; of this, it is sufficient to say that defendant's right of set-off is not based on the assignment; as between the parties to the assignment, it completes the performance of the assignor's contract of agency with the defendant, and incidentally becomes proof that the Federal Reserve Bank has no claim in the liquidation of the Peoples Bank.

When defendant's agent presented the Peoples Bank depositors' checks to the Peoples Bank, then debtor to its depositors in amounts equal to or greater than the amounts of the checks, that bank received them, and charged the depositors' accounts with the amounts of the respective checks. The effect of so charging the accounts, was to pay them in accordance with the bank's contract with its depositors, so that the checks, of course, ceased to be live obligations; all rights arising out of the checks themselves were extinguished. In American National Bank v. Miller, 229 U. S. 517, it is said: "There are some disadvantages of sending a check for collection directly to the bank on which it is drawn, but when such bank performs the dual function of collecting and crediting, the transaction is closed, and in the absence of fraud or mutual mistake, is equivalent to payment in the usual course." See, also Federal Reserve Bank v. Malloy, 264 U. S. 160; Ill. Trust & Savings Bank v. Northern Bank & Trust Company, 292 Ill. 11; 126 N. E. 533; Storing v. First Natl. Bank, 28 Fed. (2nd) 587. The Peoples Bank then had its debts to its depositors paid with money supplied by defendant before the secretary took charge, and thereby at that time became indebted to the defendant (the Federal Reserve Bank's principal) in the amount of the checks so paid, i. e. $1,214.58. At that moment, the defendant was debtor to the Peoples

Bank in the sum of $2,423.79, the amount of the Peoples Bank deposit with defendant; that debt then automatically reduced itself by the amount of the checks held by defendant and paid by the Peoples Bank to its depositors, leaving defendant indebted to plaintiff for the balance only, $1209.21. Set-off is founded on equitable principles for the purpose of preventing circuity of action (Hibert v. Lang 165 Pa. 439) and has been constantly applied to estates where insolvency existed and the law established preferences in distribution, (Fisher, Com'r v. Davis 278 Pa. 129). The necessary absence of the checks, therefore, gives no support to appellant's argument.

Appellant states its next proposition to be that the right to suit, or set-off, is in the holder of commercial paper, whether held for value or collection, and that, as the Federal Reserve Bank, and not defendant, received the draft of the Peoples Bank in payment, and held it at the time the secretary took possession, the Federal Reserve Bank alone can make claim, and that it is now merely a creditor in the liquidation. This contention will be considered with appellant's third point, which is, that the act of 1913 P. L. 294; 7 PS section 489, gives to the holder of a draft taken for the checks presented in such circumstances, the status of a depositor as to preference over other creditors in the liquidation. By the regulations, as has been said, the Federal Bank was defendant's collecting agent; whether the Peoples Bank, not a member of the Federal Reserve system, knew of that agency or not is immaterial in the decision of the case; the defendant was the principal; the principal, though not named, may assert his rights notwithstanding the agency, no subsequent superior rights having intervened. In F. and M. National Bank v. King 57 Pa. 202, 205, it is said: "Even at law an unknown principal may often avail himself of a contract made with his agent. In the case

of a simple contract he may show that the apparent party was his agent, and treat the contract as made with himself, not, however, injuriously affecting the rights of the other party. In many of these cases he is allowed to sue directly upon the contract. But wherever he can show that his money has been placed in the hands of another by his agent, it is no objection to his claim that that other has promised to pay it to the agent. In Frazier v. The Erie Bank, 8 W. & S. 18, it was ruled that if an agent procure the note of his principal to be discounted and deposit the proceeds in bank to his own credit, the principal may maintain an action therefor against the bank in his own name, and this though the bank had no notice when the deposit was made that the money deposited did not belong to the agent.'' That the agent here received a check, is immaterial, in the circumstances shown by the record. The act of 1913 referred to does not support appellant's contention; it destroys it. It may first be noted that before the act of 1913 was passed, it had been held in Com. ex rel. v. American Trust Company 241 Pa. 153, (decided in 1912), that when a banker accepts checks, and charges them against his depositor's account, and gives the depositor his own check, the holder of such checks does not occupy the status of a depositor of the banker within the meaning of the word 'depositor,' as used in the Act of May 8, 1907 P. L. 192 (see the Act of May 13, 1913 P. L. 354, 7 PS sec. 689, Fisher v. Davis, supra), providing preferential payment to depositors in the distribution of the assets of an insolvent bank or trust company. The act relied on by appellant, 1913 P. L. 294, was probably passed specifically to change the law declared by that decision. The act provides: ''Hereafter, whenever any person, receives in payment of......a check upon a bank......such bank's......check upon another person,......the person,..........so receiving such check,

shall, until payment thereof, be entitled, in case of liquidation of the bank......drawing such check, to the same preference over other creditors as if the amount of said check had been a deposit in said bank ......by a depositor.'' If that act were applied, when the Federal Reserve Bank, agent for defendant, received the check of the Peoples Bank in payment of its depositors' check, it would, in the liquidation, be treated as a depositor in the Peoples Bank in the amount of the check received, but such deposit would, of course, belong to its principal and, would leave the state of the accounts between the bank in liquidation and the defendant, (being principal) with a credit in its favor of $1,209.21, the amount tendered to plaintiff and refused.

Judgment affirmed.