GEORGE J. BASSETT, STATE BANK COMMISSIONER, *vs.*
THE WEST HAVEN BANK & TRUST COMPANY,
(NEW HAVEN BANK N. B. A., RECEIVER).

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued April 6th—decided May 4th, 1933.

*Noel Morss,* of Massachusetts, with whom, on the brief, was *Phillip Ketchum,* for the Federal Reserve Bank of Boston.

*George D. Watrous,* for the receiver.

*H. Roger Jones,* Assistant Attorney-General, with whom, on the brief, were *Warren B. Burrows,* Attorney-General, and *Ernest L. Averill,* Deputy Attorney-General, for the State Bank Commissioner.

HINMAN, J. It appears from the stipulated facts that on December 21st, 1931, the Federal Reserve Bank of Boston sent to the West Haven Bank & Trust Company, for collection, checks drawn upon the latter, which were collected by it by charging the amounts thereof against the accounts of the respective drawers, and the checks were cancelled. In remittance for the amount so collected, the West Haven bank, on December 22d, 1931, drew its draft on a New York bank payable to and forwarded to the Federal Reserve Bank of New York for account of the Reserve Bank of Boston. On December 22d, 1931, the Reserve Bank sent other checks as to which a similar procedure was followed. The remittance drafts sent to New York were duly presented for payment but not paid, as the West Haven bank had been closed on December 24th, 1931, by order of the bank commissioner. The note was sent and collected in the same manner, but remittance was made direct to the Reserve Bank by treasurer's check of the West Haven bank, drawn upon itself, which also was unpaid on account of the closing of the bank.

The Reserve Bank concedes in its brief that its

claim based upon checks so collected is precisely similar to the claim of the same bank which was under consideration in *Bassett* v. *City Bank & Trust Co.*, 115 Conn. 1, 12, 160 Atl. 60, and that the note transaction stands on the same basis as those with regard to the checks. Under the arrangement in effect between the two banks, the defendant agreed to collect and remit for cash letters, upon which the checks were sent, on the same day when received, returning dishonored items. The manner of remittance for the checks collected—by the bank draft drawn on New York sent to the Federal Reserve Bank of New York for account of the Boston bank—was also in accordance with the agreement.

In *Bassett* v. *City Bank & Trust Co., supra,* we held that the similar claim of the Reserve Bank was not entitled to payment before and in preference to the deposits and other liabilities of the bank, as trust funds or on the theory that the remittance drafts constituted an equitable assignment *pro tanto* of the deposit with the defendant's correspondent on which they were drawn, but we left open determination as to the status of such claims with respect to the classification to be accorded them and the resulting position as to priority under § 3935 of the General Statutes. The present reservation calls for such determination—specifically, "Whether the claim of the Reserve Bank, as agent for and in behalf of the payees or indorsing banks, of the checks sent for collection . . . should be classified in distribution under the head of 'all deposits;' under the head of 'all other liabilities;' or whether said Reserve Bank, as agent, is entitled in any way to participate as claimant in distribution."

It is not claimed or suggested by the receiver or the bank commissioner that the Reserve Bank as such agent is not entitled in any way to share in the dis-

tribution of avails of the assets of the defendant bank on final settlement; the controversy is as to whether the claim is to be classified as a deposit, as the Reserve Bank contends, or as among the "other liabilities" over which deposits are accorded priority in order of payment under § 3935 of the General Statutes, which is quoted in a footnote. The present problem, therefore, is as to the meaning and scope of the term "all deposits" as employed in that statute. The history of this legislation, which is traced in *Bassett* v. *City Bank & Trust Co.,* 115 Conn. 393, 399, 161 Atl. 852, affords no significant assistance in this inquiry other than the fact that before the date of its original passage, in 1837, this court, in *Catlin* v. *Savings Bank of New Haven* (1829) 7 Conn. 487, had stated (p. 495) that "an ordinary bank deposit is where a voluntary credit is taken with a bank; and for which no bank note, bill, or similar evidence of debt is given; and for which there exists a right to draw unconditionally. In every such case, a special trust and confidence is reposed in the bank. The assent of both parties is essential to such a deposit; it carries no interest; and no action lies for it, until demand made and refusal."

The most comprehensive and satisfactory definition of bank deposits which we have encountered is given in *Marine Bank* v. *Fulton Bank,* 69 U. S. 252, 256, as follows: "All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter; and that

"Sec. 3935. MARSHALING OF CLAIMS. The avails of the property of any bank or trust company in the hands of a receiver or receivers shall be appropriated ratably to the payment of: (1) The charges and expenses of settling its affairs; (2) the circulating notes, if any; (3) all deposits; (4) all sums which have been subscribed and paid in for its stock by the state or the school fund; (5) all other liabilities; and the surplus shall be distributed among the stockholders."

other kind of deposit of money peculiar to the banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand." See also *Phœnix Bank* v. *Risley*, 111 U. S. 125, 4 Sup. Ct. 332, and cases cited; *Appeal of Metropolitan Life Ins. Co.* (Pa.) 164 Atl. 715, 717; *McCrory Stores Corporation* v. *Tunnicliffe* (Fla.) 140 So. 806. As to the distinction between loans and deposits in common parlance, see *Schumacher* v. *Eastern Bank & Trust Co.* (C. C. A.) 52 Fed. (2d) 925, 927. A depositor, speaking generally, is one who delivers to or leaves with a bank money subject to his order, either upon time deposit or subject to check. 5 Michie, Banks & Banking, p. 22; *Merchants National Bank* v. *Continental National Bank,* 98 Cal. App. 523, 277 Pac. 354; *Andrew* v. *Iowa Savings Bank of Fort Dodge* (Iowa) 241 N. W. 412; *Shopert* v. *Indiana National Bank,* 41 Ind. App. 474, 83 N. E. 515; Vol. 1 Words & Phrases (4th Series) p. 720, Vol. 2 (3d Series) p. 984.

We find nothing to indicate that the preference accorded deposits under § 3935 of the General Statutes was intended to apply to situations and relationships other than those signified by the usual and ordinary meaning of the term as above defined. The obvious reason actuating the preference to depositors in the sense of those who deliver to or leave money with a bank to be, in effect, loaned to and used by it until demanded, is to encourage and attract such deposits by affording them special protection. "Depositors, in the nature of things, are . . . in a preferential class. Without them a banking institution would perish from dry rot. 'The success of almost all commercial banks depends upon their ability to obtain loans from deposi-

tors.' *First National Bank* v. *California*, 262 U. S. 366, 370 [67 L. Ed. 1030, 1035, 43 Sup. Ct. Rep. 602]. Hence, the preference to depositors was given in order to induce those having funds to deposit them." *Cameron's Account*, 287 Pa. St. 560, 568, 135 Atl. 295, 297, 58 A. L. R. 554, 558; *Appeal of Metropolitan Life Ins. Co., supra.*

When the deposit account of the maker of a check collected by the defendant for the Reserve Bank was charged with the amount thereof, the maker paid the check, his deposit was reduced by the amount of it, and the proceeds, clearly, became no longer a part of his deposit. *Bassett* v. *City Bank & Trust Co., supra,* 115 Conn. at p. 14. Thereupon it became the duty of the defendant, under its agreement with the Reserve Bank, to forthwith, on the same day, remit those proceeds to it, a course manifestly inconsistent with the distinctive characteristics of a deposit as above noted. The money can hardly be said to be "left with" the West Haven bank, but quite the contrary. There is lacking, here, even the element of mutual running accounts of collections made which was present in the *Metropolitan Life Ins. Co.* case, *supra,* and in *Parkesburg Bank's Appeal* (6 Wkly. Notes Cas. 394) quoted with approval therein as follows: "The notes, drafts, and checks charged and credited, were merely in the current of their mutual dealings, and when credited did not constitute a deposit in the proper sense of the term as used in the Bank Acts. A depositor meant to be preferred, is one who places his money in deposit for safe-keeping, to be paid out on demand upon his checks or drafts therefor. His relation is one of confidence or trust, depending on the faith that his money will always be forthcoming when he needs it. . . . Such a transaction differs wholly from the transactions of banks and bankers dealing

with each other, by way of collections for each other, contained in running accounts of debits and credits. Such transactions are not deemed deposits in a proper sense."

In *Anheuser-Busch Brewing Assn.* v. *Clayton* (C. C. A.) 56 Fed. 759, the association, the appellant, had forwarded its draft on one Morris to the McNab Bank "for collection and returns." Morris took up the draft with his own check on the McNab Bank and on the same day the latter forwarded to the appellant exchange on a New York bank for the amount, but this was not paid, the McNab Bank having failed before its presentation in New York. It was held (pp. 761, 762) that the appellant was not a depositor entitled, as such, to preference over other creditors of the bank, under the constitution of Alabama, Art. 14, § 17. "Appellant did not leave its money with the McNab Bank subject to its order, or to be returned to it on call. It did not, for its own convenience, part with the title to its money, and loan it to the bank. There was no contract, express or implied, that the collection from Morris on appellant's account was to be a deposit of any kind, but it is clear that it was intended that the money received from Morris should be remitted in 'a reasonable time' from date of collection."

The Pennsylvania statute bears a strong resemblance to our § 3935. It originally provided, Act of May 8th, 1907, P. L. p. 192, that upon liquidation the assets of a trust company should be distributed in the following order: "First. To pay all deposits in the trust company. Second. To the payment and discharge of all the remaining liabilities of such trust company, or corporation." It was held that under that statute, funds not subject to the order of the depositor at his pleasure were not preferred. *Commonwealth ex rel.* v. *Tradesmen's Trust Co.*, 250 Pa. St. 383, 95 Atl. 578;

*Parkesburg Bank's Appeal, supra.* In 1913 (P. L. p. 354) the statute was amended to cover not only deposits subject to immediate check but also those payable after specified notice or at the expiration of a fixed period. But it was held in *Appeal of Metropolitan Life Ins. Co.* (1932) *supra,* that the Act of 1913 cannot be construed to have broadened the meaning of the term "depositor" so as to include one whose relationship was solely that of principal to the bank as collecting agent. "There can be no pretense that appellant was intrusting to the trust company for safekeeping these collections made by its agent on its behalf."

It had also been held in *Commonwealth ex rel.* v. *American Trust Co.* (1912) 241 Pa. St. 153, 88 Atl. 430, that when a banker accepts checks and charges them against his depositor's account and gives the depositor his own check, the holder of such check does not occupy the status of a depositor of the banker within the meaning of the word as used in the Act of 1907. Obviously for the purpose of specifically changing the law as so construed, another Act was passed in 1913 (P. L. p. 294) providing, "Hereafter, whenever any person . . . receives, in payment of . . . a check upon a bank, . . . such bank's . . . check upon another person, . . . the person . . . so receiving such check, shall, until payment thereof, be entitled, in case of liquidation of the bank . . . drawing such check, to the same preference over other creditors as if the amount of said check had been a deposit in said bank . . . by a depositor." *Peoples Bank* v. *McDowell National Bank,* 103 Pa. Sup. 241, 158 Atl. 293.

These decisions and resulting statutory amendments are confirmatory of our views above expressed as to the proper construction and consequent limitations of our own statute and, as well, suggest that if a more

liberal policy as to protection by way of preference to owners or holders of checks and similar items forwarded for collection, in the event of insolvency of the collecting bank, is desirable, it is properly to be provided through legislative action. *Bassett* v. *City Bank & Trust Co.*, 115 Conn. p. 22.

Our answer to the questions reserved is that the claim of the Federal Reserve Bank as holder of the treasurer's check for the amount of the note collected and its claim as agent for and in behalf of the payees or indorsing banks of the checks sent for collection should be classified in distribution under the head of "all other liabilities."

No costs will be taxed in this court.

In this opinion the other judges concurred.