[Civ. No. 5170. Second Appellate District, Division Two.—April 26, 1929.]

THE MERCHANTS NATIONAL BANK OF LOS ANGELES (a Corporation), Respondent, v. CONTINENTAL NATIONAL BANK OF LOS ANGELES (a Corporation), Appellant.

Root & Bettin, Roland T. Kinney and Root, Bettin & Painter for Appellant.

Nolan, Rohe & Freston, Page, Nolan, Rohe & Hurt, Rohe & Freston, Ralph E. Lewis and Herbert Freston for Respondent.

Loeb, Walker & Loeb, *Amici Curiae* for Appellant.

O'Melveny, Tuller & Myers, *Amici Curiae* for Respondent.

BURNELL, J., *pro tem.*—This is an action by respondent bank seeking to recover from appellant bank the amount of a check drawn upon and paid by the former, after indorsement by the latter, under circumstances to be hereinafter related. The trial in the court below was had upon a stipulation as to the facts, which was supplemented by the testimony of but one witness, the assistant cashier of respondent bank. From the findings of the learned trial court, which closely follow said stipulation, the facts are ascertained to be as follows:

On October 14, 1921, the Title Guarantee and Trust Company drew its check upon respondent bank, with which it had deposits ample to cover payment thereof, in the sum of $1,651.60, payable to Camille Sentous, administrator of the estate of Mary Billings, and handed said check to one Carroll E. King for delivery to Mr. Sentous. King was at that time a practicing attorney at law and was attorney of record for the administrator, continuing as such until September, 1922. Instead of delivering the check to the administrator, King, without right or authority from anyone, and some time between the 14th and the 20th of October, indorsed the check as follows:

> "Camille Sentous
> Administrator of the Estate of Mary Billings
> By Carroll E. King his Attorney
> Carroll E. King
> Special"

King at this time, and for some time prior thereto, had carried an account with appellant bank under the name of "Carroll E. King, Special." On October 19, 1921, King deposited four checks with appellant bank, of which the check above referred to was one, making a total deposit of $1,799.96, and up to the 25th of October, 1921, King had on deposit in said bank $2,400. From the 26th of October, 1921, to the 18th of November, 1921, his deposit balance exceeded $1,000, and from the latter date to the 28th of November it exceeded $800. The check in question was

accepted by appellant bank without requiring any proof or identification as to the truth or character of the indorsement above set forth, or of any authority on the part of King to receive payment on the check or credit upon its deposit, and the amount of the check was placed by the appellant to the credit of King in his special account and no part of the sum called for therein was paid by appellant bank to the payee.

Both banks were members of the Los Angeles clearing-house association, which is an association of banks having a constitution, by-laws, rules and regulations, among the purposes of which is to settle from day to day the mutual banking demand of its members through the ascertaining, striking and liquidations of balances between them, and the effecting of daily exchanges between member banks, which practice is known as "clearing." The rules of the clearing-house, in so far as such rules have application to the instant case, provide as follows:

"All negotiable paper deposited for clearance by the members of this association shall bear the stamp of the depositing member, which shall clearly indicate the name of the member, its Clearing House number and the date of clearance. The stamp shall be for clearing house purposes only, and shall guarantee the validity, regularity and sufficiency of all prior indorsements on all paper so cleared, except the indorsement of an original payee of a Certificate of Deposit, and it shall not be construed to supply a missing indorsement. . . . "

On October 20, 1921, appellant bank indorsed the check in question as follows, using for that purpose its clearing-house stamp:

> "Continental National Bank
> Pay only through Los Angeles Clearing House
> Oct. 20 1921
> Los Angeles, California
> 78"

and on the same day the check was cleared by the association, being charged against respondent bank and credited to the appellant bank in the accounts of that day, and in this manner the amount thereof was paid by respondent bank to appellant bank, respondent bank charging the account of the Title Guarantee and Trust Company, the drawer of the

check, with the amount thereof, and on or about October 24, 1921, returning the original check to said drawer.

On September 15, 1922, the attention of respondent bank was for the first time called to the irregularity of the indorsement of the check and respondent on that date made an oral demand upon appellant for the payment thereof upon the ground that the check had been paid by appellant bank without a proper indorsement by the payee named in the check. This oral demand was followed on September 30, 1922, by a second demand upon appellant bank for the payment of the check, which demand was refused. The attention of respondent bank was called to the irregular indorsement by Mr. Sentous on or about September 15, 1922, who then demanded payment to himself as administrator. Mr. Maurer, the assistant cashier of the respondent bank, told Mr. Sentous that he would have to make a demand on the title company and that "when they made demand on us we would pay them." On September 30, 1922, Sentous presented to respondent a written demand for payment of the amount of the check, together with an affidavit that the indorsement was forged. The affidavit was handed back to Sentous and was again presented to respondent on November 8th by the Title Guarantee and Trust Company and on that date respondent bank paid the amount of the check to said title company. The title company had previous to this, and on the 30th of September, 1922, demanded that respondent credit the account of the payee of the check with the amount thereof. The stipulation as to the facts states that immediately upon receipt of the demand of September 15, 1922, made by the payee upon respondent, respondent "investigated the character and truth or regularity of said indorsement, and of the right of the said Carroll E. King to make the same, and found the said indorsement to have been made without the authority of the maker or payee of said check." On December 13, 1922, respondent commenced the present action.

In seeking a reversal of the judgment appellant makes a number of points having to do with alleged insufficiency of the evidence to support certain of the findings. It is also contended that respondent bank is barred by laches; that payment of the check by respondent bank was a voluntary payment for which no recovery can be had; also that both

banks were equally at fault and respondent was not entitled to recover upon the theory of money paid by mistake, and that recovery should not have been had upon the theory that appellant bank was liable by reason of its indorsement of the check since, as it is claimed, the forged indorsement was in legal effect a "missing endorsement" and under the clearing-house rules appellant bank's indorsement could not be construed to supply a missing indorsement and was therefore of no binding effect.

Taking up first the objections made to the findings, appellant contends that the court erred in finding that on September 30, 1922, respondent agreed to refund the amount of the check to the Title Guarantee and Trust Company, and by proceedings initiated on the 15th of September, 1922, the plaintiff attempted to collect the amount thereof from the appellant. The agreed statement of facts recites that on or about September 15, 1922, the payee (Mr. Sentous, administrator) demanded of respondent that it credit him with the amount of the check upon the ground that it had been paid by respondent without proper indorsement and that on the 30th of September, 1922, the Title Guarantee and Trust Company, the maker of the check, likewise demanded that the respondent credit the account of Mr. Sentous as administrator with the amount of the check; that on September 15, 1922, respondent advised appellant of these demands for payment and in turn demanded payment from the appellant. The testimony of Mr. Maurer is that on September 15, 1922, Mr. Maurer, who was the only officer of respondent bank who handled the transaction, stated to Mr. Sentous "that he had to make demand on the title company and when they made demand on us *we would pay them.*" (Italics ours.) He further testified that he did not actually pay Mr. Sentous the money until the 30th of September, which was the day he presented the affidavit. With reference to the demands made by respondent bank upon appellant bank the stipulation as to the facts states: "That also on September 15, 1922, plaintiff herein advised defendant that demand had been made upon the plaintiff herein for the payment of said sum of $1,651.60 for the reasons aforesaid, and made demand upon the defendant herein for the payment to the plaintiff by the defendant of said sum of

$1,651.60.'' This evidence, we believe, is amply sufficient to sustain the finding complained of.

It is next argued that the court erred in making its thirteenth finding of fact. This finding may be thus separated into its component parts:

(a) ''That this action is not one by a depositor against a bank for the payment of a forged or raised check;

(b) ''That it is not true that the plaintiff paid the claim upon which this action is based after the statute of limitations (sec. 340, subd. 3, Code Civ. Proc.) had barred the same;

(c) ''That it is not true that the payment by respondent to the maker of the check was without right or authority and contrary to statute and that it is not true that it was a mere voluntary payment.''

The above findings, while directly responsive to issues tendered by the appellant's answer, are really conclusions as to the law rather than statements of ultimate facts, but inasmuch as the questions involved, which are also presented by some of appellant's other points, are of extreme importance to the solution of the problems presented on this appeal, they may as well be taken up under a discussion of appellant's objections to the findings.

As to the first portion of the findings, appellant has furnished us with no authority for its position that the present action is one by a ''depositor'' against a bank. There is nothing in the record to indicate that respondent bank was at any time a depositor of appellant bank.

A ''depositor'' is one who pays money into a bank in the usual course of business, to be placed to his credit and subject to his check (*State* v. *Corning State Savings Bank,* 136 Iowa, 79 [113 N. W. 500]; *Anheuser-Busch Brewing Assn.* v. *Clayton,* 56 Fed. 759 [6 C. C. A. 108]; *Commonwealth* v. *Sponsler,* 16 Pa. Co. Ct. 116), or the beneficiary of a fund held by a bank as trustee (*Kimball* v. *Norton,* 59 N. H. 1 [47 Am. Rep. 171]). (See, also, *Murphy* v. *Pacific Bank,* 130 Cal. 542 [62 Pac. 1059].)

Tested by this definition it is evident that this portion of the finding was correct.

The action is by a drawee bank against a collecting bank to recover money paid by the former in reliance upon the latter's clearing-house indorsement.

We next come to the question of the application of the statute of limitations (sec. 340, subd. 3, Code Civ. Proc.) to the respondent's cause of action. It is not claimed that respondent's cause of action is itself barred by the provisions of the statute, but that the code section in question would have been a bar to any action by the maker of the check against respondent, and hence that respondent's payment of the amount thereof to Mr. Sentous, the payee named therein, upon the demand of the maker, Title Guarantee and Trust Company, not being a payment under compulsion, was a mere voluntary payment for which no recovery can be had. A discussion of these points involves two lines of inquiry: First, does section 340, subdivision 3, of the Code of Civil Procedure apply to the sort of action which the Title Guarantee and Trust Company would have been compelled to bring to enforce its demand had respondent bank refused to make the check good? Second, if that section was applicable, did the promise made by respondent bank to refund the amount of the check to the maker take the claim of the latter out of the statute?

Appellant's contention that respondent's payment of the amount of the check to the payee (on demand of the maker) was a voluntary payment, on account of which no recovery can be had, is based entirely on the premise that section 340, subdivision 3, of the Code of Civil Procedure would have applied as a bar to any action which the maker might have brought to enforce such payment. The argument is that a payment made after the period of limitations has passed is one not resting upon any legal obligation or made under any legal necessity. (*Stone* v. *Hammell*, 83 Cal. 547 [17 Am. St. Rep. 272, 8 L. R. A. 425, 23 Pac. 703]; *Schlitz* v. *Thomas*, 61 Cal. App. 635 [216 Pac. 51].) Section 340, subdivision 3, of the Code of Civil Procedure, relating to the time within which certain actions must be commenced, in so far as it is here involved, is as follows: "Within one year. 3. An action . . . by a depositor against a bank for the payment of a forged or raised check."

[4] The period under this section commences to run from the date the depositor receives his canceled check (*Union Tool Co.* v. *Farmers & Merchants' Nat. Bank*, 192 Cal. 40, 52 [28 A. L. R. 1417, 218 Pac. 424]; *Glassell Development Co.* v. *Citizens' Nat. Bank*, 191 Cal. 375, 385 [28

A. L. R. 1427, 216 Pac. 1012]), which in this case was found by the trial court to be on or about October 24, 1921. Actual payment was made by respondent to the payee of the check on November 8, 1922, or about two weeks after the year had elapsed; hence, if section 340, subdivision (3), of the Code of Civil Procedure applied, the cause of action of the maker against respondent bank would have been barred on October 24, 1922.

By the express provisions of section 348 of the Code of Civil Procedure, there is no limitation to the time within which an action may be brought to recover money deposited with a bank. This was the law in California from 1873, when this section in its original form was added to the code until 1905, when, by an amendment to section 340 of the same code, which up to that time had contained no reference to actions by depositors against banks, the legislature made an exception to the general rule laid down in section 348, taking from its purview but one class of actions by depositors against banks, namely, those "for the payment of a forged or raised check," and leaving all other classes of actions by depositors still without time limitation.

 The provisions of the code—indeed of all the codes— are to be construed with relation to each other "as though all such codes had been passed at the same moment of time and were parts of the same statute." (Pol. Code, sec. 4480, *People* v. *Central Pac. R. R. Co.,* 83 Cal. 393 [23 Pac. 303], and *Miller* v. *Engle,* 3 Cal. App. 325 [85 Pac. 159].) That is to say, the codes must be construed as a single statute (*McKay* v. *McKay,* 125 Cal. 65 [57 Pac. 677]). Hence the rule of statutory construction that an express exception is not to be extended beyond the fair import of its terms (*Perry* v. *Ames,* 26 Cal. 372; *Mordecai* v. *Board of Supervisors,* 183 Cal. 434 [192 Pac. 40]), applies in considering the effect of section 340, subdivision 3, as an exception to the general rule laid down by section 348 and it must be presumed that the legislature in enacting the amendment to section 340 intended to create no exception other than that therein in terms specified (*Tynan* v. *Walker,* 35 Cal. 634 [95 Am. Dec. 152]), since an express exception excludes all others. "The expression of one thing is the exclusion of another; and consequently no further exception was intended." (*Brocket* v. *Ohio etc. R. R. Co.,* 14 Pa. St. 241

[53 Am. Dec. 534]; Lewis' Sutherland on Statutory Construction, sec. 494.)

■ It is another rule of statutory construction that an exception should be strictly construed (Ib.) and this rule is in no way opposed to the requirement for liberal construction of the code (sec. 4, Code Civ. Proc.) or to the rule that in the construction of a statute a particular provision, inconsistent with a general provision, is paramount to the latter (sec. 1859, Code Civ. Proc.).

With these principles in mind the next question to be answered is this: Had respondent bank refused payment to the Title Guarantee and Trust Company or order, and had the latter been compelled to resort to the courts for redress, would its action have been an action by a depositor against a bank for the payment of a *forged or raised* check? We have italicized the words "forged or raised" for there is no question but that the action would have been one by a depositor against a bank since as the trial court found " . . . said Title Guarantee and Trust Company, the maker of said check had and maintained an account and funds on deposit with the plaintiff bank . . . " The only question in this connection is whether such action would have been for payment of a "forged or raised check."

There is neither proof nor contention in the record that the face of the check when presented was in any way altered as to amount, name of payee or of maker or otherwise. The sole defect was the forged indorsement written on the reverse side of the paper.

■ A check is defined as "a bill of exchange drawn on a bank payable on demand" (sec. 3265a, Civ. Code), and "a bill of exchange is an unconditional order in writing addressed by one person to another, signed by the person giving it, requiring the person to whom it is addressed to pay on demand, or at a fixed or determinable future time a sum certain in money to order or bearer." (Sec. 3207, Civ. Code.) The instrument involved in this case was therefore complete in itself without any indorsement. (*First Nat. Bank* v. *United States Nat. Bank*, 100 Or. 264 [14 A. L. R. 479, 197 Pac. 547].) An indorsement is not, under the above definition, an essential part of a check, it need not even be written on the instrument itself, but may be "upon a paper attached thereto" (sec. 3112, Civ. Code).

"The forgery of the indorsements was entirely distinct from the issuance of the checks on false demands, and there was no relation between them." (*Los Angeles Investment Co.* v. *Home Savings Bank,* 180 Cal. 601, 610 [5 A. L. R. 1193, 182 Pac. 293, 297].)

■ We are of the opinion that the presence of a forged indorsement does not make an otherwise unaltered check, bearing the genuine signature of the maker "a forged or raised check" within the meaning of section 340, subdivision 3, of the Code of Civil Procedure and that had the legislature intended to extend the exception to the general rule laid down in section 348 of the same code it would have so indicated by apt words. In this opinion we are fortified by the reasoning of the district court of appeal for the first appellate district of this state, as well as by well-considered cases from other jurisdictions.

In the very recent case of *Atwell* v. *Mercantile Trust Co.,* 95 Cal. App. 338 [272 Pac. 799], the action was by a depositor against a bank to recover the amount of checks issued by the depositor and paid by the bank upon forged indorsements. The bank plead the bar of section 340, subdivision 3, of the Code of Civil Procedure. The point presented for decision was thus identical with the question here under discussion. The court noted that section 340 "covers a special class of cases and is an exception to the general rule" promulgated by section 348 and proceeded to discuss the development of the law relating to the duties and obligations existing as between banks and their depositors as throwing light upon the question of the legislative intent in adopting this exception to the rule. The court further said:

"The execution of a check and the execution of an indorsement are distinct. The first is the act of the maker and the second is the act of the payee. A check is complete as a check without an indorsement. A check is defined as a 'bill of exchange . . . payable on demand.' Section 3265 (a), Civil Code. An indorsement 'must be written on the instrument itself or upon a paper attached thereto.' Section 3112, Civil Code. The history of the development of the law relating to the duties and obligations between banks and depositors, briefly referred to in the above decisions, leads to the conclusion that the words 'forged or raised'

check, as used in these statutes and in our own statute, do not refer to a 'forged indorsement.' . . .

"Counsel for appellant urges that the unauthorized indorsement and cashing of the checks in this case constituted forgery under the provisions of sections 470 and 476 of the Penal Code. That the indorsements were forged is conceded by respondent, and the trial court made findings to that effect. The question, however, is not whether forgery was committed in the indorsing and cashing of the check, but rather whether this is a case of a 'forged or raised' check within the meaning of subdivision 3 of section 340 of the Code of Civil Procedure."

In *Kleinman* v. *Chase Nat. Bank,* 124 Misc. Rep. 173 [207 N. Y. Supp. 191], the supreme court of New York, appellate division, had the same question before it. Section 326, Negotiable Instruments Law of New York (Consol. Laws, chap. 38), provided: "No bank shall be liable to a depositor for the payment by it of a forged or raised check, unless within one year after the return to the depositor of the voucher of such payment such depositor shall notify the bank that the check so paid was forged or raised."

The court there said: "It is conceded that the bank received no notice of the forged indorsement from plaintiff until some two years after the bank's cancelled checks or vouchers were returned to him. Obviously, therefore, if section 326 comprehends within its scope forged indorsements, the plaintiff is estopped from now asserting his claim against the bank. Our view, however, is that the notice required to be given in section 326 is limited to cases where payment is made of a check upon which the maker's signature is forged or the check is raised.

"The commonly accepted meaning of the words 'a forged check' in the commercial world is a check upon which the maker's name is forged. It is manifest by a consideration of the reason for the enactment of section 326 of the Negotiable Instruments Law, as well as the commonly accepted meaning of the words 'forged check,' that the legislature intended to limit the requirement to give notice to cases where payment is made on a check upon which the maker's signature is forged and did not intend to extend the statute to include forged indorsements. Before the enactment of section 326 our common-law rule was that the depositor as

maker owed the bank the duty to make a reasonably careful examination of his cancelled checks or vouchers and notify the bank within a reasonable time thereafter. The time of notice thus was flexible, depending upon the circumstances in each case (see *Morgan* v. *United States Mortgage & Trust Co.*, 208 N. Y. 218 [Ann. Cas. 1914D, 462, L. R. A. 1915D, 741, 101 N. E. 871]).

"A check possesses the attributes of a contract and certain characteristics of property. It is essentially a commercial paper. It was the legislative purpose in enacting section 326 in response to the needs of business stability to make definite and inflexible the time when the drawee bank must be notified by the maker of its payment of a check upon which his name is forged. The act is in derogation of the common law, hence must be strictly construed. At common law the maker depositor owes no duty to the bank to make inquiry or examine as to any forged indorsement upon his returned vouchers, because as to indorsements he has ordinarily no greater knowledge or information than the bank (*Prudential Ins. Co.* v. *National Bank of Commerce*, 227 N. Y. 510 [15 A. L. R. 146, 125 N. E. 824]; *Critten* v. *Chemical Nat. Bank*, 171 N. Y. 219 [57 A. L. R. 529, 63 N. E. 969]; *Welsh* v. *German-American Bank*, 73 N. Y. 424 [29 Am. Rep. 175]). If the legislature intended to modify this common-law maxim to the extent of imposing upon the depositor the onerous and unreasonable duty to detect within a year forged indorsements it would have stated it explicitly. Such intended modification cannot be found in the express words of the statute, nor can it be fairly implied from the text (*North British & Mercantile Ins. Co.* v. *Merchants' Nat. Bank*, 161 App. Div. 341 [146 N. Y. Supp. 720]). We are thus in accord with the view of the court below that section 326 has no application to payments made by a bank upon a forged indorsement and the judgment against the defendant Chase National Bank is affirmed.

An Iowa statute (sec. 9266, Iowa Code of 1924), identical in wording with the New York statute quoted above except that it provided a six-months' limitation, was involved in the case of *McCornack* v. *Central State Bank*, 203 Iowa, 833 [52 A. L. R. 1297, 211 N. W. 542]. The court there said:

"This section was in force at the time the check in question was cashed as section 1889a, Code Supplement of 1913. It is claimed appellee's cause of action is barred under this statute. Prior to the enactment of the statute, we had held, in *German Sav. Bank* v. *Citizens' National Bank* (101 Iowa, 530 [63 Am. St. Rep. 399, 70 N. W. 769]), that a depositor was under no duty to the bank as to the genuineness of an indorsement. We said:

" 'The check was returned with an apparent genuine indorsement of Quinlan. The fact that intervener had paid the money thereon, and presumably had satisfied itself that the indorsement of Quinlan was genuine, as it was in duty bound to do, was a further reason why plaintiff should not, in the absence of knowledge to the contrary, have concerned itself as to the genuineness of the indorsement of Quinlan's name thereon. Furthermore, the plaintiff owed no duty to the defendant, or to the intervener, as to the genuineness of the indorsement of Quinlan.' (Citing many authorities.) . . .

"The statute does not, we think, change this rule in respect to the genuineness of the signature of indorsers. The indorsement is no part of the check as made by the drawer, although it is, of course, contemplated that the payee must indorse it. But, since the maker is not required to know the signature of the payee, and has a right to issue the check payable to the order of one unknown to him, relying on the bank to pay only in accordance with his direction, a forged indorsement does not make the check a 'forged check' within the meaning of the statute. In *Union Tool Co.* v. *Farmers & Merchants' Nat. Bank, supra,* cited by appellant, there was, in addition to a forged indorsement, an alteration on the face of the check. We are of the opinion the action is not barred by the statute in question."

A case somewhat analogous, although not precisely in point, is *State* v. *Merchants' Nat. Bank,* 145 Minn. 322 [177 N. W. 135]. The state had sued a bank which had cashed certain voucher warrants upon forged indorsements and later presenting the same to the state treasurer for redemption, who had thereupon redeemed them. The bank invoked section 6378 of the General Statutes of Minnesota of 1913, which was identical with the Iowa statute quoted hereinabove. While holding that the instruments in question

were not checks nor were they charged to a depositor's account, the court said of the statutory provision referred to: "By its terms it applies only to forgery of the name of a depositor to a check purporting to have been drawn on a bank by a depositor and paid by the bank and charged to the depositor's account."

Appellant, in contending for the application of section 340, subdivision 3 of the Code of Civil Procedure, to the cause of action which the Title Guarantee and Trust Company would have had against respondent bank, relies strongly upon *Union Tool Co.* v. *Farmers & Merchants' Nat. Bank, supra,* in which the supreme court held that "Where the action is one to recover money deposited with a bank and not paid out by it on a check claimed to have been forged or raised, the provisions of section 348 apply. To the special case where the action arises because of payment on a check which the plaintiff asserts was forged or raised, the special provision of subdivision 3 of section 340 applies." The Union Tool Company case was also relied upon by the appellant in *Atwell* v. *Mercantile Trust Co., supra,* and the court there very clearly distinguished it from the case under discussion. The Union Tool Company case was considered and the distinction clearly brought out in the case of *McCornack* v. *Central State Bank,* 203 Iowa, 833 [52 A. L. R. 1297, 211 N. W. 542].

In view of our holding on the question above discussed it seems unnecessary to enter into any extended discussion as to the effect of the promise of respondent bank to refund the amount of the check to the maker thereof as taking the latter's claim out of the statute of limitations. It may be pointed out, however, that if the provisions of section 340 of the Code of Civil Procedure *did* apply, such promise, having been verbal, would not have availed to remove the bar of the statute (sec. 360, Code Civ. Proc.).

Appellant makes the points that the court below erred in finding that respondent "was not guilty of laches in not ascertaining the true status of said check until September 15, 1922; that plaintiff was not careless and negligent in allowing said check to pass through its clearings; that plaintiff was not careless and negligent in allowing one year and eighteen days to elapse without informing himself and the defendant of the alleged true status of said check"; and

that in fact and as a matter of law respondent was guilty of laches. ▮▮▮ Laches is a defense ordinarily peculiar to actions in equity. (*Suhr* v. *Lauterbach*, 164 Cal. 591 [130 Pac. 2]; *Kleinclaus* v. *Dutard*, 147 Cal. 245 [81 Pac. 516].) Conceding that this case is an action in equity rather than one at law (*Crocker-Woolworth Bank* v. *Nevada Bank*, 139 Cal. 564 [96 Am. St. Rep. 169, 63 L. R. A. 245, 73 Pac. 456]), we think these points are not well taken.

▮▮▮ We cannot agree that the court's finding of the absence of laches was a mere legal conclusion. The court in addition to the finding "the plaintiff was not guilty of laches" found as to specific facts upon which the finding above quoted was based, namely, that the check was drawn and delivered to King for Sentous on October 14, 1921, presented by King to the appellant bank for deposit in King's account between October 14 and 20, 1921, bearing the forged indorsement, indorsed by appellant bank with its clearing-house stamp and deposited by it with the clearing-house and charged against respondent on October 20, 1921, and on the same day charged by the respondent to the account of the maker; that prior to September 15, 1922, respondent had no notice or knowledge that the check had been improperly paid or that the indorsement was a forgery and that on September 15, 1922, the payee named in the check demanded of respondent that it credit him with the amount thereof upon the ground that the check had been paid without proper indorsement by said payee; that on the same day the respondent bank advised the appellant bank of Mr. Sentous' demand and made demand upon appellant for payment to respondent of the amount of the check and that on the 30th of September the maker of the check likewise demanded that respondent bank credit the payee's account with the amount of the check; that on September 30, 1922, appellant bank refused to accede to the demand of the respondent bank to refund the amount of said check and that on November 8, 1922, respondent paid the amount of the check.

Elsewhere in this opinion we will take up the matter of appellant bank's liability upon the clearing-house indorsement and of the right of respondent bank to rely thereon. Suffice it here to say that the evidence, including the stipulation as to facts, sufficiently supports the court's finding above

referred to and that it appears therefrom that respondent bank had no actual notice that any indorsement prior to that of appellant bank was defective or forged until its attention was called to that fact by Mr. Sentous on the 15th of September, whereupon respondent bank immediately took the matter up with appellant bank and made demand for reimbursement.

While liable to its depositor, Title Guarantee and Trust Company, respondent bank was not, as to appellant bank, required to look beyond appellant's indorsement and inquire into the validity of prior indorsements, it had no actual notice of any irregularity in regard to the check until its attention was called thereto by the payee, Mr. Sentous, on September 15, 1922, and immediately upon being advised of such irregularity it reported the same to appellant and demanded payment from the latter. What greater degree of promptness it could have been expected to exercise it is difficult to imagine.

Having disposed of these problems we now come to that of appellant bank's liability on its clearing-house indorsement. As to this phase of the case appellant contends: (a) that the indorsement made by King was void and therefore tantamount to a "missing indorsement" and as such not within the guarantee specified by the clearing-house rules; (b) that respondent should not have recovered on the theory of mistake; and (c) that (even assuming the indorsement should not be regarded as a "missing indorsement") no recovery should have been had upon the appellant bank's clearing-house indorsement. Inasmuch as the first and third of these contentions involve a construction of the clearing-house rules and their legal effect, we shall first consider these points.

We have heretofore quoted the only clearing-house rule involved in this controversy and it will be recalled that it provides that the clearing-house stamp shall guarantee, (1) the validity, (2) the regularity, and (3) the sufficiency of all prior indorsements and that it shall *not* be construed to supply a missing indorsement. As to the general effect of clearing-house rules upon the obligation of member banks with regard to transactions between themselves, it has been held that "it is perfectly competent for banks, associated together to bind themselves by rules governing,

as between themselves; the effect of their indorsements, and these rules, as to them will supplant the law." (*Crocker-Woolworth Nat. Bank* v. *Nevada Bank*, 139 Cal. 564 [96 Am. St. Rep. 169, 63 L. R. A. 245, 73 Pac. 456]; *First Nat. Bank* v. *United States Nat. Bank*, 100 Or. 264 [14 A. L. R. 479, 197 Pac. 547].)

There is a clear distinction between the liability of a collecting bank to a drawee bank upon the former's clearing-house indorsement, in the case of a check which is forged as to the name of the drawer or payee or which has been raised, and its liability in the case of a forged indorsement. This distinction is apparent upon a perusal of the cases of *Crocker-Woolworth Nat. Bank* v. *Nevada Bank, supra, Union Tool Co.* v. *Farmers & Merchants' Nat. Bank, supra,* and *First Nat. Bank* v. *United States Nat. Bank, supra.* In the first named of these cases the court pointed out that under clearing-house rules identical with those involved in this action there is eliminated from the warranty of indorsement the code provision that the instrument indorsed "is in all respects what it purports to be," "in other words," the court says, "*the indorsement does not of itself import an undertaking that the check has not been altered;* and in proceedings to recover back the amount paid on an altered check *the indorsement could not be made the foundation of the action* as importing a promise to refund the money in case it should afterwards appear that the amount in the body of the check had been fraudulently altered." (*Crocker-Woolworth Nat. Bank* v. *Nevada Bank,* quoting from *Redington* v. *Woods,* 45 Cal. 428 [13 Am. Rep. 190].) (Italics are those appearing in the opinion quoted from.) The facts in the Crocker-Woolworth National Bank case were as follows: On December 9, 1895, the Bank of Woodland, in Yolo County, drew its check upon the Crocker-Woolworth National Bank in San Francisco for $12 to the order of one Dean; Dean was a depositor of the Nevada Bank; he fraudulently altered the check by changing its date to December 13th and raising its amount from $12 to $22,000, and on December 17th he indorsed the check and deposited it with the Nevada Bank, which thereupon credited his account with the amount of the check; on the same day the Nevada Bank put its clearing-house stamp on the check, which found its way in regular course from the clearing-

house to the Crocker-Woolworth National Bank, which was the San Francisco correspondent of the Bank of Woodland, and had funds of the latter on deposit; the check was honored under the clearing-house rules by the payment to the clearing-house of the balance found due, the Nevada Bank receiving the credit due it; the next day Dean drew $20,000 from his account at the Nevada Bank and absconded; on January 3, 1896, the Crocker-Woolworth Bank informed the Bank of Woodland of the payment of the check, which promptly notified the Crocker-Woolworth Bank that no such check had been drawn; the Nevada Bank was immediately notified and repayment was demanded therefrom. We recite these facts in order that it may be clearly understood that in reversing a judgment in favor of the Crocker-Woolworth National Bank, which sued to recover from the collecting bank, the court had before it a case differing from the instant case in this very important particular, to wit: that, as clearly pointed out by the supreme court in its opinion, the banking-house rules did not purport to make the clearing-house indorsement a guarantee of anything other than that stated in the clearing-house rules, namely, the validity, regularity and sufficiency of all prior indorsements. The court there pointed out that a clearing-house indorsement under the rule of the clearing-house is not such indorsement as is specified in section 3116 of the Civil Code as it then stood and that the clearing-house rule is an express limitation of the effect of the indorsement.

The fact must not be overlooked that Dean was the payee named in the originally valid check and that the indorsement was a genuine indorsement by himself.

In *Union Tool Co.* v. *Farmers & Merchants' Nat. Bank, supra,* the situation was different. The checks there involved and which were drawn against the Union Tool Company's account in the Farmers & Merchants' National Bank were, after altering the name of the payee, indorsed with the name of the altered payee and again indorsed by the forger by writing his own name thereon and thereafter deposited by him with the Hellman Commercial Trust & Savings Bank. The latter placed its clearing-house indorsement upon the checks in question. In the suit by the maker of the checks against the bank upon which they were drawn the Hellman Bank intervened. The latter bank was in the

same position with regard to the transaction as is appellant bank in the present case. The judgment of the trial court was in favor of the plaintiff and against the drawee, Farmers & Merchants' National Bank, and in favor of the latter bank and against the intervening Hellman Bank. In other words, the court there held that the maker of the checks was entitled to recover as against the bank upon which he had drawn and that the latter bank was entitled to recover as against the collecting bank. After adverting to the well-settled rule that as between a bank and its depositor the bank is only warranted in paying out the money of the depositor on his genuine order and in accordance therewith, and that no degree of care upon the part of the bank will excuse it from liability, the court went on to hold that the Farmers & Merchants' National Bank was guilty of negligence by reason of which the maker was entitled to recover, and said:

"The intervener, Hellman Commercial Trust & Savings Bank, can be in no better position with respect to the defenses pleaded than can the Farmers and Merchants Bank; they both rest upon the same facts and the same law with reference thereto. In a case involving a similar principle it was said: 'The defendant bank is in no better attitude to defend against the government's demand than would have been the banks which advanced the money to McCoy upon his forged instruments.' Those banks had the opportunity to discover the facts and it was their duty to do so. Had they investigated, they would have discovered that the holder of these checks had no legal title to them, and was not an authorized payee.' (*United States* v. *National Bank of Commerce of Seattle,* 205 Fed. 433, 437 [123 C. C. A. 501]. See, also, *Harmon* v. *Old Detroit Nat. Bank,* 153 Mich. 73 [126 Am. St. Rep. 467, 17 L. R. A. (N. S.) 514, 116 N. W. 617].) The evidence shows that the intervener, Hellman Commercial Trust & Savings Bank, failed to exercise proper care to ascertain whether or not C. H. Mueller had indorsed any of the checks here involved. It in effect took the word of the forger, paid him the money, guaranteed all indorsements on the checks and forwarded them through the clearing-house for the collection from the Farmers and Merchants Bank. Referring again to the case of *United States* v. *National Bank of Commerce of Seattle, supra,* it is there

held that where a forged check was cashed by a bank other than that on which it was drawn, such bank was negligent in failing to discover the forgery and in not requiring identification of the payee, and could not urge in defense of its liability to refund the money that the drawer of the check was negligent in failing promptly to discover the fraud. To quote from the opinion in that case, it was said: 'It was their duty to ascertain whether there was such a person as the payee named in the checks, and to know that the person who presented the checks was entitled to receive the payment thereof. They made no investigation, required no identification, and took no precaution. They paid the money negligently, and at their own risk, and the defendant bank in choosing to rely upon the identification of the payee by the banks which cashed the checks did so at its own risk.' And in this respect The Farmers and Merchants Bank was also guilty of negligence, for, although thoroughly equipped to do so, it took no pains to learn if the indorsements on the checks were genuine, depending, according to the custom of banks, where checks have passed through clearing-houses, upon the responsibility of the preceding indorsements.''

In *First Nat. Bank* v. *United States National Bank, supra,* the situation was very similar to that in this case. Blank checks of the form used by the Willamette Iron & Steel Works had been stolen. They were filled out by the thieves and were signed with a forged signature purporting to be that of the officer of the steel works whose duty it was to sign and pay checks. These checks were drawn upon the First National Bank with which the steel works was a depositor. They were passed on various merchants in Portland who had accounts with the United States National Bank and who in due course deposited them there in their respective accounts. The United States National Bank stamped on each of the checks an impression of its clearing-house stamp and they were presented by the Portland Clearing House to the First National Bank for payment and paid in the usual manner. Thereafter, the First National Bank being notified that the checks were forgeries and that the *indorsements thereon were likewise forged,* credited its depositor, the steel works, with the amount thereof which it had previously charged against its account, and demand

for repayment by the United States National Bank being refused, brought suit to recover. The supreme court of Oregon delivered a long and well-considered opinion, too long to be here quoted, and held that under the general principles of the law relating to payment by mistake, the First National Bank would not have been entitled to recover and that a clearing-house indorsement (clearing-house rules identical with those here involved) does not guarantee the genuineness of the drawer's signature and that the First National Bank was not entitled to recover for the reason that the checks in question were never at any time valid. In so holding, however, the court recognized the rule that where the defect consists in a forged indorsement recovery can be had under the clearing-house guarantee. In summing up, the court used this language, which we think bears out the above statement:

"We may summarize the foregoing decisions as follows: The doctrine of *Price* v. *Neal* (3 Burr. 1354 [97 Eng. Reprint, 871]), is adopted by the Negotiable Instruments Law; and consequently a drawee who pays bears the risk of the drawer's signature being a forgery. If, however, the drawee is innocent of actual fault, and the holder is chargeable with bad faith or negligence, the drawee's hands are untied, and he can compel the holder to refund. It cannot be said, as a matter of law, that the defendant was guilty of negligence on account of its failure to detect the forgery of the signature of the drawer, even though the defendant had among its files the genuine signature of the drawer. If the checks are considered alone, and the rule of the clearing-house are for the moment eliminated, we find that the act of presenting the checks for payment is neither a representation nor a warranty made by the holder to the drawee that the signature of the drawer was genuine, and we further find that the indorsements as placed by the holder upon the back of the checks did not constitute representations or warranties of the genuineness of the drawer's signature. The holder must refund where he has received payment on a forged indorsement of the check, if the check bore the genuine signature of the drawer. *The obligation to refund payment received on a forged indorsement exists, whether the checks are considered alone or in connection with the clearing house rules.* If the checks are considered

alone, the rules of the common law enable the drawee to recover; if the checks are considered in connection with the clearing house rules, *the drawee can recover on the guaranty which the clearing house rules attach to the indorsement of the holder.* But the rule which permits a drawee to recover payment made on a forged indorsement is not available to the plaintiff, because the signature of the drawer was forged and the instrument was never at any time valid, but from the very beginning was an invalid order in its entirety. The plaintiff did not pay *on a genuine instrument bearing a forged indorsement;* but payment was made on a paper to which the name of the drawer was forged, and, since the plaintiff is bound to know the signature of the drawer, it paid at its peril.'' (Italics ours.)

In *State* v. *Merchants' Nat. Bank, supra,* the state warrants in question were deposited by the party who had stolen them and had forged the indorsement of the payee upon them, to his own account in the Exchange Bank, which thereupon indorsed them in the usual manner and presented them through the clearing-house to the Merchants Bank for payment, which thereupon paid them to the clearing-house and presented them to the state treasurer for redemption. The trial court had held that both banks were liable to the state but that the Exchange Bank was primarily liable and that if the Merchants Bank were obliged to pay, it would be entitled to recover from the Exchange Bank. The court said:

''We agree with the trial court. The Exchange Bank simply cashed or purchased these voucher warrants. Under familiar principles of law, when that bank transmitted them, with its indorsement, to the Merchants Bank, it guaranteed that all previous indorsements were genuine and that it had good title to the paper. (3 Ruling Case Law, 1148; G. S. 1913, sec. 5877; *Youngberg* v. *Nelson,* 51 Minn. 172 [38 Am. St. Rep. 497, 53 N. W. 629]; *Brown* v. *Ames,* 59 Minn. 476, 482 [61 N. W. 448].)''

We are of the opinion that appellant bank was liable to respondent bank under its clearing-house indorsement.

As to recovery upon the ground of mistake, we are of the opinion that if this were the sole ground upon which the respondent could rely it would be compelled to bear

its loss. Inasmuch as we have determined that it is entitled to an affirmance of the judgment upon the ground just discussed, no useful purpose would be subserved by a lengthy discussion of the principles and authorities relating to recovery by reason of mistake. Suffice it to say that this subject is discussed at great length in the opinion in *Crocker-Woolworth Nat. Bank* v. *Nevada Bank, supra,* and also in the case of *First Nat. Bank* v. *United States Nat. Bank, supra,* and it was held in the former, under the facts which have already been adverted to, that where equally innocent parties have dealt with one another under a mistake, the burden of loss resulting from the common error will ordinarily be left where the parties themselves have placed it, and that recovery can only be had where in equity and good conscience the defendant should be called upon to refund.

With respect to the contention that the indorsement in question must be construed as a "missing indorsement," it is hard to conceive by what mental legerdemain an indorsement, however defective, which is actually written upon a check can be classed as an indorsement which is missing. Two classes of cases are contemplated by the clearing-house rule in question: first, those in which an indorsement actually on a check is considered in regard to (a) its validity, (b) its regularity, (c) its sufficiency, and second, those in which a necessary indorsement is missing. A "valid" indorsement means one "having binding force; authority by law; legally efficacious" (Anderson; Bouvier). One lacking these elements is still an indorsement, but is an invalid indorsement. "Regular" means duly authorized (Webster). An indorsement which is not duly authorized—a forged instrument—may not be regular, or operative (sec. 3104, Civ. Code), but it is still an indorsement. "Sufficient" means competent or adequate. An indorsement lacking the initials or first name of the payee or his title, such as "treasurer" or "trustee" would be insufficient, but it would still be an indorsement. It is obvious that the clearing-house rule, in so far as it related to missing indorsements, had reference, not to those cases in which an indorsement on a check was invalid, irregular or insufficient, but those in which it was not there at all.

. We have carefully examined and considered all of the contentions urged by appellant and, while we have omitted discussion of some of them, we feel that the legal principles involved therein have been sufficiently discussed hereinabove. The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 24, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 24, 1929.

All the Justices concurred.